THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY
v. JOHN GRANT.

No. 270.

**1. Charge of the Court not Error, when.**— Where appellee sues appellant for loss and damage to a stock shipment, occasioned by negligence and delay on the part of appellants, and such delay in transportation is sought to be excused and justified by appellants on the ground that there was a strike and washouts along the line of road, which prevented the forwarding of the stock, thus causing the loss and damage complained of, *Held*, when there is no testimony to support a charge that a washout occurred, there is no error in refusing it.

**2. Connecting Carriers—Partnership, How Proved.**—Where a petition alleges a partnership between two connecting carriers, and there is no denial of such partnership, verified by affidavit as the statute requires, it need

not be proved, but is to be taken as admitted, and under such pleadings the first carrier would be liable for all damages accruing on its connecting line of road.

**3. Partnership, Who is Liable in.—**Where a partnership exists. a tort or violation of a contract committed by one of the partners is the act of both; and either can be sued and held liable if such tort grows out of the partnership business.

**4. Contract of Shipment—Parol Evidence.—**Where goods are shipped under a verbal contract, the delivery afterwards to the shipper of a bill of lading, his attention not being called to its terms, does not conclude him from showing what the actual agreement was under which the shipment was made.

**5. Same—Fraud in Securing Signatures to.—**Where, in a shipment of stock, no written contract is entered into between the shipper and carrier before said shipment is put en route, and after said stock have been started toward their destination, the shipper and his men are called into the depot at a way station late at night and there told to hurriedly sign for transportation, and he is compelled to sign papers which he has not had time to read, owing to the coercion and impatience of the train men, *Held*, that such conduct is sufficient to constitute fraud in securing the signature of the shipper to a written contract of shipment.

**6. Same — Verbal Contract — Merger. —** A verbal contract can not be merged into a written contract obtained by fraud or misrepresentation.

**7. Measure of Damages.—**Where a common carrier is sued for loss and damages to a stock shipment. the measure of the damages is the value of the stock at the point of destination, as to those killed, and the difference in the market value of the stock delivered, if in an injured condition, and what they would have sold for if they had been delivered uninjured.

**8. Same — How Estimated. —** In calculating damages of this character, where the shipper is to be paid in foreign money, evidence of what the shipper was to be paid in such foreign money and its value in our currency is admissible, and an allegation by the shipper that he was to have been paid in such money is not a necessary part of his petition.

**9. Notice of Claim for Damages, Sufficiency of.—**When a contract of shipment requires a notice of a claim for damages to be made in writing to the carrier's agent at the point of destination, and such written notice is expressly waived by the agent of said carrier, a verbal notice is sufficient upon which to base a claim for damages.

ON REHEARING.

**10. Assignments of Error, Object of. —** An assignment of error not copied into the brief is thereby waived, and can not be considered by this court, as the object of requiring assignments of error to be copied into briefs is to apprise the opposite parties and the court upon what counsel relies for a reversal, and it is too late, after the fire of the opposite party has been drawn and the opinion of the court elicited, to permit counsel to fall back on reserved assignments to reinforce a position, as it would be allowing an advantage that will not be tolerated in any court.

**11. Same—What is Not.—**In an action against a railway company for injuries to stock shipped over its line of road. a charge to the jury, "that so much of the written contract as seeks to relieve the defendant from the liability of a common carrier, and to relieve it from the consequences of negligence on the part of its agents or employes, is unreasonable and void," is not erroneous.

APPEAL from El Paso.   Tried below before Hon. T. A. FALVEY.

*Hague & Davis,* for appellant.—1.  A requested charge, though partially covered by the charge of the court, but which indicates material issues in the case not covered by the general charge, operates as a request of the court to charge upon such issues.   Kirby v. Estill, 75 Texas, 484.

2.  In order to make the carrier liable for the loss of goods occurring beyond its own line, a contract to carry and deliver the goods beyond its line must be shown; and the fact that the contracts state on their face that the charges are payable in Mexico, and show that the property is addressed to an individual in the City of Mexico, is not sufficient to warrant the court in charging the jury, as a matter of law, that the contracts bound the defendant to deliver the property in the City of Mexico, when the contracts further expressly state that the property is to be delivered at El Paso, Texas.   Railway v. Myrick, 107 U. S., 102; McMillan v. Railway, 16 Mich., 118;  Hunter v. Railway, 76 Texas, 195;  Ott v. Railway, 31 N. W. Rep., 519;  Carter v. Peck, 4 Sneed, 203;  Elmore v. Railway, 23 Conn., 457;  Angle v. Railway, 9 Iowa, 493;  Laws. on Carr., sec. 236.

3.  It is error for the court to assume in its charge that a fact has been proved over which there is a controversy, much more so where the fact is without evidence to support it.   Lee v. Yandell, 69 Texas, 34; Railway v. Rider, 62 Texas, 267;  Railway v. Nixon, 52 Texas, 28;  Heldt v. Webster, 60 Texas, 208.

4.  All antecedent oral agreements or understandings are merged in and extinguished by a subsequent valid contract made between the parties; and plaintiff's assent to the contract and his understanding of its terms, and the legal effect thereof, will be conclusively presumed, in the absence of fraud or imposition shown to have been practiced by defendant in procuring his signature thereto.   Railway v. Weakley, 50 Ark., 397;  Duff v. Railway, 41 L. T. (N. S.), 197;  Express Co. v. Dickson, 94 U. S., 549;  Gott v. Dinsmore, 111 Mass., 45.

5.  A charge of the court not warranted by the pleadings and evidence is erroneous.   Ross, Ellis & Co. v. Hawley & Co., 3 Willson's C. C., sec. 108;  Duffer & Hecker v. Herbert, 2 Willson's C. C., sec. 613;  Railway v. Reid, 1 W. & W. C. C., sec. 297.

*Davis, Beall & Kemp* and *Dillard & Muse,* for appellee.—The several assignments of error presented by appellant, calling in question the action of the lower court in giving or refusing charges, can not be considered by this court, because in the motion for a new trial filed by appellant, the errors in this behalf, if any, were not specifically called to the attention of the lower court.   Ward v. Railway, 47 N. Y., 33; 7 Am. Rep., 405; Hamburg v. Wood, 66 Texas, 176;  Railway v. Cullers, 81 Texas, 394;

Railway v. Baird, 76 Texas, 264; Railway v. Allison, 59 Texas, 193; Railway v. Tisdale, 78 Texas, 8.

FLY, Associate Justice.—Appellee sued appellant for $21,000 actual and $20,000 vindictive damages, alleged to have arisen by reason of a failure of appellant to properly care for and deliver 1407 hogs, which it had contracted to carry from Kansas City, Missouri, to the City of Mexico, Mexico.

Appellant answered, setting up a written contract, and denying that it had agreed to deliver the hogs in the City of Mexico, but only to carry them to El Paso, Texas; that the damage to the hogs occurred on the line of its connecting carrier, the Mexican Central Railway Company, which had been delayed in the transportation of the hogs by a strike and washouts on its line.

In a supplemental petition appellee alleged fraud and misrepresentation in procuring his signature to the written contract; that the hogs were shipped by a verbal contract to transport the hogs to the City of Mexico; that after the journey had begun, at a small station, a paper was presented to him, and he was told to sign it at once as the train was to leave in a few seconds, and that it was represented that the paper was nothing but a document upon which appellee and his hands would be transported; that appellant and its connecting line were partners, and jointly interested in the freight money. Appellant replied to this supplemental petition by exceptions and a general denial. The judgment was for $14,850.57, the case having been tried by a jury.

*Conclusions of Fact.*—1. In the early part of August, 1887, appellant made a verbal agreement with appellee, through its assistant general freight agent, to transport for a certain consideration, from Kansas City, Missouri, to the City of Mexico, 1407 fat hogs, at the rate of twenty-five miles an hour; that the hogs were to be stopped and unloaded, fed, and watered at La Junta, El Paso, Jimulco, and the City of Mexico; that pens would be furnished at these places with troughs, and the pens were to be flushed with water; that the tanks along the route were to be kept filled with water, so that the hogs could be sprinkled with water.

2. The hogs were delivered to appellant, and the train left Kansas City about 9:30 o'clock p. m. on August 13, 1887, and no written contract was presented until the train had gone to Argentine, a small town about four and one-half miles from Kansas City; that when this place was reached appellant was told to hurry up and sign for transportation; that he was told he did not have a minute; that he went upstairs in the station, being hurried all the while, and was told to sign a paper, which he did. Appellant did not know what the contents of the paper were, but was told that it was for his transportation.

3. That poor time was made between Kansas City and El Paso, and the hogs were greatly injured by being permitted to stand on side tracks in the hot sun; and no facilities were offered for watering the hogs, and the weather was very hot and the hogs very fat.

4. The hogs arrived at El Paso on the morning of the 17th of August, and were placed by appellant in an open pen filled with filth, and no troughs being provided, the water was turned into the pen and the hogs had to drink the filthy water; that the hogs were kept in this pen for four or five days before appellee could get them started again to Mexico; that some fifty or sixty of the hogs died between the time the shipment left Kansas City and when they left El Paso.

5. A slow run was made between El Paso and Mexico, and the hogs were thrown about and so bruised and injured by the careless and reckless manner in which they were handled that a large number died.

6. That 347 head of hogs died between Kansas City and the City of Mexico; that all the hogs weighed on an average, when they left Kansas City, 330 pounds each, and the average weight of those that were living when they arrived in the City of Mexico was 284 pounds, the average loss per head being 46 pounds, when, if they had been properly transported and cared for, the average loss should not have been more than 12 pounds per head.

7. That these hogs were worth on the market in Mexico from 14 to 15 cents in Mexican money per pound, but appellee had contracted his at 11 cents per pound; that a dollar in Mexican money was worth at that time 80 cents in money of the United States.

8. That the death of the hogs and the loss of the others was occasioned by the negligence and carelessness and failure to comply with its contract on the part of the appellant and its connecting line.

9. That appellant and the Mexican Central Railway Company were partners and jointly interested in and bound by the contract of shipment of the hogs.

10. That appellant does not complain of the amount of the judgment, and the amount for which the verdict is rendered is amply sustained by the proof.

Appellant endeavored to justify the delay in the transportation of the hogs on the ground that a strike was prevailing on the Mexican Central Railway, its connecting line, and that there were washouts on the same railway that prevented the forwarding of the hogs from El Paso, Texas, to the City of Mexico. It is admitted by appellant, that the question in regard to a strike being in operation that interfered with traffic on the Mexican Central Railway was fully submitted to the jury, and it is also practically admitted that the strike was of little consequence; but it is insisted that the question of whether washouts interfered with and delayed the shipment of hogs from El Paso should have been submitted to the

jury. This was not done, and appellant requested a special charge embodying the question of nonliability if there were washouts.

There is no testimony whatever to sustain the allegation that the delay was caused by washouts. It is true that McQuin stated that Mr. Comfort, who was a passenger conductor on the Mexican Central Railway, notified him that he (Comfort) could not receive the hogs, because " there was a strike and washouts." He also swore that he had informed the general claim agent of appellant, some months afterward, that the Mexican Central had refused to receive the hogs on account of a strike and washouts. When Comfort testified, he gave details of the strike, but does not intimate that there were any washouts on the Mexican Central Railway. He also swore that the road was not ballasted, and that the track was soft from heavy rains, but in no manner hints that there were any washouts. It is true that he stated that he had been compelled a few days before the hogs were received to fix a bridge, but does not indicate that its defective condition arose from the hard rains or washouts, and there is nothing to show that the bridge was down on August 17, 1887, when the hogs reached El Paso, or at any time after that period. The run made by the conductor, Comfort, was between El Paso del Norte and Chihuahua, and over that part of the road the run of the hog train was satisfactory.

The train dispatcher of the Mexican Central, A. Newell, swore that the weather reports from his road were sent through his office, and that while the road in many places was not fit for fast traffic in August, 1887, there was no trouble with the bridges or culverts at that time, so far as he remembered. He did not know why the railway company did not provide against rains, as they came every year at that time. Appellant asked an instruction only as to washouts, and there was no testimony that showed that a washout occurred on the Mexican Central Railway during August, 1887. There being no testimony whatever to support the charge, there was no error in refusing it. Wooters v. Kaufman, 73 Texas, 395; Rousal v. Stranger, 73 Texas, 670; Tel. Co. v. Kendzora, 77 Texas, 257; Railway v. Greathouse, 82 Texas, 104.

The second assignment of error is, that " The court erred in assuming in its charge that the written contracts of shipment were through contracts, and in refusing to submit to the jury defendant's fifth special charge, for the reason that if the jury had found under the other portions of the charge of the court that the written contracts were the governing contracts of shipment, then defendant would not be liable for losses occasioned by the Mexican Central Railway Company, through no fault of this defendant."

The charge of the court is not open to the criticism made in the assignment; but if it were, appellant would have no cause of complaint. The contract has no clause limiting liability to its own line, and while it may be true that it was a contract for a shipment from Kansas City to El Paso, Texas, yet under the pleadings and proof in this case appellant would be

liable for the damages that occurred even on the line of the Mexican Central Railway.

Appellee in his first supplemental petition alleges, "that in said contract for the shipment of said hogs the defendant and the Mexican Central Railway Company were partners, and were jointly interested therein in the proportion which had been agreed upon between them." There was no denial of this plea under oath by appellant. There is no plea to it, except that of general denial, which, it is perhaps unnecessary to say, was not verified by affidavit. The partnership having been alleged, and there being no denial of it, as required by the statute, it did not devolve upon appellee to introduce any proof that the partnership existed. It was not denied; it was not an issuable fact, but taken as admitted by appellant. Railway v. Tisdale, 74 Texas, 9. The partnership having been pleaded and not denied, it is to be taken as admitted, and then it would not matter whether the written contract was to convey the stock to El Paso, and to there deliver said stock to the partner, the Mexican Central Railway Company, or was a contract for a through shipment to the City of Mexico, and appellant would be liable for the damages that accrued on the latter railway.

The two roads were partners in the shipment; the freight was to be collected in the City of Mexico, and the hogs were consigned to appellee at the City of Mexico, and a tort or violation of contract committed by one of the partners was the act of both, and either could be sued and held liable, if the tort grew out of the prosecution of the partnership business. We think that even if proof of the partnership had been required under the pleadings, that the testimony is sufficient to establish it.

There was ample proof to sustain the allegation in appellee's pleading, that appellee was overreached and caused to sign a contract with whose contents he was not acquainted, and with which he was not permitted to acquaint himself by appellant. The written contract was not presented to appellee until he was en route for El Paso, and he was then told that it was merely a paper that secured him transportation; and not being given time in which to read it, and relying upon the statements made to him, and impelled by the fact that he was told that he must sign to get transportation, he signed the contract. This was a different contract from the verbal one under which the hogs were shipped. In the verbal contract it was agreed that troughs should be furnished for the hogs, that a running time of twenty-five miles per hour should be made, and that the hogs should be shipped through without delay to the City of Mexico.

The question of whether the written or verbal contract should control was properly submitted to the jury; and while this was unnecessary under our view of the case, still from the standpoint of the appellant, the charge was sufficient. It has been held, that where goods had been shipped under a verbal contract, the delivery afterwards to the shipper

of a bill of lading, his attention not being called to its terms or conditions, did not conclude him from showing what the actual agreement was under which the shipment was made. Swift v. Steamship Co., 106 N Y., 206; Sproat v. Donnell, 26 Maine, 187; Hutch. on Carr., sec. 128.

The third assignment of error holds that the charge of the court in regard to the signing of the written contract was upon the weight of the evidence. This assignment has no foundation to support it. The charge leaves it for the jury to find whether or not the necessary time was given to inspect the written contract, and whether the contents were misrepresented to appellee.

Neither is there any merit in the fourth assignment, which attacks that portion of the charge which instructs the jury, that if they believe that appellant and appellee made a verbal contract, and that the hogs were received, and the journey was begun, and a written contract was presented to appellee, and he signed it with a knowledge of its contents, or that he had sufficient time to have read its contents, and was not induced to sign it by any false representations of appellant's agent, or that he signed the same under circumstances that he should have read the same, then the jury should find for the appellant. There was nothing objectionable in this charge. The verbal contract would not be merged into a written contract obtained by fraud or misrepresentation. Appellee swore that the contents of the contract were misrepresented to him, and that no time was given for him to investigate its contents, and there is no effort to disprove it. No part of the verbal contract is denied, except as to the time to be made.

The third and fourth assignments might have been disposed of, as was the second, on the ground that it was immaterial what was charged or not charged in regard to the written contract, it being alleged (and not denied) and proved that a partnership existed between appellant and its connecting line.

The petition claims damages in a certain sum of money, denominated as so many "dollars," and the evidence showed that appellee was to receive 11 cents per pound in Mexican money for the hogs, and that Mexican money was worth 80 cents on the dollar. The court charged the jury, that "In rendering your verdict, if you find any sum due plaintiff, you will state the amount in United States currency, and in making your calculation in United States currency of the value of said hogs in Mexican money, you are charged to be governed by the evidence as to the value of Mexican money as compared with current money of the United States."

This is objected to, because there is no allegation that the hogs were to be paid for in Mexican money, or what was the value of Mexican money. If the charge was erroneous, it certainly enured to the benefit of appellant, and so far as it is concerned is harmless. There was no objection

offered to the testimony that the hogs were to be paid for in Mexican money, nor to that showing the value of Mexican money.

The object of the whole investigation involved in the trial was to ascertain how much, if any, appellee had been damaged by the failure of appellant to perform its contract of carriage. There was a declaration that he had been damaged in a certain sum, but the proof showed that the sum in which appellee was damaged was a less sum, as in arriving at the damage it was necessary, as the hogs were to be paid for in Mexican money, to find out the value of Mexican money in order to measure the damages in American money. Appellant might have objected to the proof of the contract in Mexican money, but he did not do so, and does not in his motion for a new trial call attention to the supposed error in the charge. The objection comes too late at this time.

We are of the opinion, however, that there was nothing objectionable in the testimony that the hogs were to be paid for in Mexican money, for the only question, as before intimated, to be determined, was the amount of damages appellee had sustained, and it would not matter what he was to be paid in. The measure of damages was the value of the hogs that were killed at the point of destination, and the difference in the market value of the hogs that were delivered in their injured state and what they would have sold for had they been properly delivered. It was unnecessary for appellee to set out what he was to receive for the hogs, except the money value; and proof that he had contracted to exchange the hogs for horses would have been sufficient, provided it was shown what the market value of the horses was in American money. The contract that appellee had to receive Mexican money could cut no figure in the case, except in the event there was a difference in the value of the two moneys. In this case the difference was in favor of appellant. There was no error in the charge.

The sixth assignment of error is aimed at the charge of the court which instructs the jury, that if they believed that before the hogs were removed from the possession of the Mexican Central Railway Company, appellee went to the agent of the railway in the City of Mexico and offered to give written notice of the damages, and it was waived, that this would be sufficient notice. This is considered objectionable by appellant, because the notice should have been given in El Paso. The stipulation provides that the notice shall be given at the point of destination, which was the City of Mexico, and in the answer it is alleged that appellant had an agent in the City of Mexico. Appellee, in Mexico, went to the general freight agent of the Mexican Central Railway Company, and offered to make a claim for the damages in writing, and it was expressly waived.

We have considered all the assignments of error, and are of the opinion that there is no error in the judgment. It is affirmed.

*Affirmed.*

Delivered March 12, 1894.

FLY, Associate Justice.—As stated in the opinion in this case, there is not a particle of testimony that even tends to establish washouts on the Mexican Central Railway; and if the track was "soft" it was not on account of an unprecedented rainfall, for it was shown by some of appellant's witnesses that it occurred every year, and one of the witnesses said he did not know why the appellant did not fix its road. The evidence shows that not an act of God, but the negligence and want of ordinary care upon the part of the corporation, caused the road to be in bad condition, if it was in bad condition. No witness swears that there were any washouts, and Newell, the train dispatcher for appellant, swore, " I do not remember any trouble with any bridges or culverts, though there may have been."

Newell says that Comfort told him that the company would not receive the freight on account of the strike and 'washouts, but Comfort does not swear that there were any washouts. But appellant says it was not Conductor Comfort, but another Comfort, who was a " division superintendent," who told Newell this. The record does not show that any other Comfort had any connection with appellant, and if there was any division superintendent named Comfort, the record does not disclose it.

It is insisted in the motion, that this court erred in holding, " that the question in regard to a strike being in operation had interfered with traffic on the Mexican Central Railway was fully submitted to the jury, and further practically admitted that the strike was of little consequence." We quote from the brief of appellant: " The charge of the court fairly enough submitted to the jury defendant's nonliability on account of delay at El Paso, Texas, by reason of the strike alone." Again the brief says: " But there was evidence tending to show that the strike was of little consequence."

We think the statement in the opinion of which complaint is made is fully justified by the brief. It would, however, be immaterial if it were not; the question of the strike was fairly submitted to the jury, and there was no testimony to justify the submission of the question of washouts.

The fifth ground for rehearing sets up other reasons than those in the second assignment of error, which are, the court erred in its charge to the jury in assuming that the written contract was for a through shipment and refusing to give the special charge requested. There is, however, no merit in this paragraph of the motion.

Appellant desires this court to consider an assignment of error not copied into the brief, and which was thereby waived. This can not be done. The object in requiring assignments of error to be copied into a brief is to apprise the appellee and the court upon what appellant relies for a reversal, and it is too late after the fire of the opposite party has

been drawn, and the opinion of the court elicited, to permit an appellant to fall back on his reserved assignments to reinforce his position. It would be allowing an advantage that will not, we think, be tolerated in any court.

Appellant contends that the error, however, was fundamental, and should have been noticed without an assignment. We think not. It was not error of any kind to instruct the jury, that "So much of the written contract as seeks to relieve the defendant from the liability of a common carrier, and to relieve it from the consequences of negligence on the part of its agent or employes, is unreasonable and void; as the law will not permit a carrier, like the defendant, by contract to relieve itself of negligence on part of itself or its servants." Railway v. Harris, 67 Texas, 166.

The motion for a new trial in the lower court was as follows: "Now comes defendant in the above styled and numbered cause, and moves the court to set aside the verdict and judgment herein, and grant it a new trial: first, for the reason that the verdict of the jury was without evidence to support it, and was contrary to the law as given in charge of the court; second, for the reason that the court erred in its charge to the jury; third, for the reason that the court erred in refusing to give to the jury defendant's special charges requested."

From this motion, general and indefinite, and which directs the mind of the court below to no specific error, sprung seven assignments of error, six of which were copied into the brief, and were fully considered by this court, and the seventh is abandoned in the brief, and is attempted to be brought forward for recognition for the first time in the motion for rehearing. Applying rules 67 and 68 for the government of District Courts to this case, and we might with reason have refused to consider any of the assignments of error.

The motion for rehearing is overruled.

                                        *Motion overruled.*

Delivered April 25, 1894.

Writ of error refused May 28, 1894.

Motion for rehearing on writ of error overruled June 18, 1894.