Fort Worth & Denver City Railway Company v. G. C. Wright.

Decided October 13, 1900.

**Carrier—Live Stock Shipment—Limiting Liability—Oral Contract Sued On, and Written Contract Pleaded by Carrier.**

Plaintiff sued for damages on an oral contract made by him with defendant's agent for the shipment of plaintiff's horses from Texas to Alabama over connecting lines, and defendant having pleaded a written contract of shipment limiting its liability to its own lines, plaintiff's agent in charge of the horses testified that the written contract was signed by him without knowing its contents, as he did not have time to read it before the train carrying the stock left the depot. There was also evidence to the effect that the prior oral contract was a mere inquiry by plaintiff and an answer thereto by the carrier's agent stating the through rate, and that plaintiff and his agent had made such shipments before, and had always signed written contracts such as the one in this case. Held, that the court erred in refusing a charge requested by defendant to the effect that if the shipper, from former dealings with the defendant, knew that it was the regular rule for the shipper to sign such written contract as the one in this case, and that when he inquired of the carrier's agents as to the best rate to Alabama he contemplated entering into the written contract when the horses should be shipped, and that he knew, or could have known, from previous dealings, what stipulations were in the contract, the verdict should be for the defendant.

Appeal from the County Court of Clay. Tried below before Hon. H. A. Allen.

*Stanley, Spoonts & Thompson* and *Robert Harrison,* for appellant.

*James F. Carter,* for appellee.

STEPHENS, Associate Justice.—In September, 1898, appellee delivered to appellant, at Henrietta, Texas, a car of horses to be carried to Eufaula, Ala., by appellant and its connecting carriers, the Texas & Pacific and Louisville & Nashville railway companies, paying to appellant's agent at Henrietta, Mr. Watrouse, the freight charged for the entire haul. Owing to delay and bad treatment of the horses beyond appellant's line, appellee recovered a verdict and judgment against appellant for $450, from which this appeal is prosecuted.

The issue tendered by appellee was that of an oral contract, by the terms of which appellant undertook a through carriage of the horses from Henrietta to Eufaula. The issue tendered by appellant was that of a written contract signed by its agent, Mr. Watrouse, and the agent of the appellee, Mr. Blalack, who went with the horses, by the terms of which appellant's liability was limited to damage occurring on its own line. The invalidity of this written contract was put in issue by a sworn plea on the part of appellee, which issue was thus submitted to the jury in the charge of the court:

"But if you find and believe from the evidence that the verbal contract was entered into prior to the execution of said written agreement, and as specified in the first paragraph of this charge, and that said written agreement was signed by plaintiff's agent without said plaintiff, or his agent, knowing the contents thereof, and they did not have time to read said contract before the train carrying said stock left the depot, and said contract was without consideration, then you are instructed that said written contract is void and not binding on the parties hereto."

The court was requested by appellant to further submit this issue as follows, but refused to do so: "You are instructed that if you believe from the evidence that Mr. Wright or Mr. Blalack, from previous dealing with this defendant, knew that it was the regular rule for the shipper to sign such written contract as the one signed in this case, and that when he inquired of Mr. Watrouse what was the best rate to Eufaula, Ala., that he contemplated entering into and signing the written contract when the horses were shipped, and that he knew, or could have known, from previous dealing, what stipulations were in the contract, then you will find for the defendant."

To show that the testimony raised this phase of the issue, we have only to quote what is stated, with substantial accuracy, in appellant's brief, in support of the assignment complaining of the court's refusal to grant this special instruction: "O. J. Watrouse testified that he did nothing in his dealings with Mr. Wright except tell him what was the lowest through rate that could be procured, and that there was nothing in any way different in his dealings with Mr. Wright or Mr. Blalack from previous dealings with them on similar occasions many times before, and that always in the previous shipments had written contracts like the one in question been signed. Mr. Wright testified: 'I have made several shipments of stock from Henrietta, Texas, and have signed written contracts, but do not know whether they were like this one or not. I never read any of them. I could have read them.' Mr. Blalack testified that he signed G. C. Wright's name to the contract. 'I signed this written contract because I knew I had to sign it or defendant would not ship the horses and mules. I had made several shipments from Henrietta, and have always had to sign some kind of bill of lading, and have read some of them, but do not know whether they were all alike or not. After I got on the train I had an opportunity to read this written contract, but did not do it. I used to read these contracts, but found there was nothing in them for me and quit reading them.' "

It may now be considered as settled in this State that common carriers can not avoid the usual consequences of an undertaking to carry freight, by requiring the shipper to sign a written contract under circumstances of duress, or without consideration. Railway v. Carter, 9 Texas Civ. App., 679; Railway v. Darlington, 40 S. W. Rep., 550; Railway v. Withers, 16 Texas Civ. App., 506; Railway v. Avery, 19 Texas Civ. App., 235; Railway v. Wright, 20 Texas Civ. App., 136. But it is equally well settled that in cases of interstate carriage the initial carrier may limit its liability to damage occurring on its own line, and the evi-

dence in this case tended to show that it was appellant's uniform custom to do so, and that this was known, or should have been known, to appellee. If, therefore, in contracting for the transportation of the horses, appellee contemplated the signing by his agent of a written contract containing what has long been held by our Supreme Court to be a reasonable provision, that of limiting the carrier's liability to its own line, the contention that the written contract was without consideration, or that it had been executed under circumstances of duress, could not be sustained; and it should have been left to the jury to determine whether or not the execution of the written contract was contemplated by the parties when the preliminary oral contract was made. See Shelton v. Transportation Co., 59 N. Y., 258. The charge given and quoted above, to which error is also assigned, did not submit the issue fully, and, without some such qualification as that suggested by the special charge quoted, was possibly misleading. We think, however, that the special charge might have been drawn in better form, as may be inferred from what is above stated, but as applied to the facts of this case its technical defects did not render it wholly inadmissible.

For the reason given, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*