KANSAS CITY, M. & O. RY. CO. OF TEXAS v. ADAMS. (No. 7569.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 15, 1916.)

1. COURTS ☞247 — APPELLATE COURTS—JURISDICTION — AMOUNT IN CONTROVERSY — CONSOLIDATION.

Where, on appeal to county court from justice court, an action in which appellee was sole plaintiff was by agreement of parties consolidated with another action in which a third person was interested, it will be presumed that such third person assigned his interest to appellee, the action being carried on in appellee's name, and the amount involved after the consolidation will be considered as the amount involved for the purpose of determining the jurisdiction of the Court of Civil Appeals.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 984–993; Dec. Dig. ☞247.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**2. Carriers ⬳207—Carriage of Live Stock —Shippers—Contracts.**

Where a shipper of live stock, knowing that he would sign a written contract, orally contracted for cars for shipment, *held*, that the written contract later executed governs the carrier's liability.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 129–230; Dec. Dig. ⬳207.]

**3. Carriers ⬳219 — Carriage of Live Stock—Liability of Initial Carrier.**

Notwithstanding Vernon's Sayles' Ann. Civ. St. 1914, art. 731, declaring that all common carriers over whose lines property is received for through carriage shall be deemed connecting carriers and one the agent for the other, the initial carrier may by contract limit its liability for negligence to negligence on its own line.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 950, 951; Dec. Dig. ⬳219.]

**4. Appeal and Error ⬳1175—Determination—Remand.**

Where the case was fully developed below, and the evidence showed defendant was not liable, judgment for plaintiff should be reversed on appeal without remand.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. ⬳1175.]

Appeal from Knox County Court; J. H. Milam, Judge.

Action by Tom Adams against the Kansas City, Mexico & Orient Railway Company of Texas, begun in justice court and appealed to county court, where it was consolidated with another action. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

D. J. Brookreson, of Benjamin, for appellant. Coombes & Coombes and J. A. Stephens, all of Benjamin, and J. S. Kendall, of Munday, for appellee.

BUCK, J. [1] The transcript in this case was filed in this court June 10, 1912. The appellee, plaintiff below, filed November 13, 1912, what he terms a "suggestion by appellee," in the form of a motion to dismiss appeal, setting up the fact that two suits were originally filed in the justice court of Knox county, one styled Tom Adams v. Kansas City, Mexico & Orient Railway Company of Texas, alleging damages arising from a shipment of cattle in the sum of $37.65, and the other styled Brannin & Adams v. Kansas City, Mexico & Orient Railway Company of Texas, also for damages arising out of a shipment of cattle in the sum of $81.50. Plaintiffs having recovered in the justice court for the full amount sued for, the defendant appealed to the county court, where it appears that by agreement of all parties the two said suits were consolidated, and thereafter prosecuted under the name of Tom Adams as the plaintiff. Upon a preliminary consideration of the case by this court, it was thought that it involved practically the same question as presented in cause No. 7503 on the docket of this court, styled G. W. Rust v. Texas & Pacific Railway Company. In the latter case, three suits had been filed by the same plaintiff in the justice court against the same defendant railway company, and upon motion of the defendant in the justice court two of the cases were consolidated, and upon appeal to the county court, upon motion of the defendant, the consolidated case was consolidated with the third case, thereby placing the amount sought to be recovered within the jurisdiction of this court. The defendant having secured judgment in the county court, plaintiff appealed. Appellee filed in this court its motion to affirm on certificate, no transcript having been filed within the time allowed by law. In the consideration of said motion, as well as the questions raised by reason of the appeal, this court was in some doubt as to its jurisdiction, inasmuch as in each of the three cases originally filed in the justice court the amount to be recovered was $99.95. If the amount involved in the appeal was not determined by the consolidations granted both in the justice court and in the county court, then this court would be without jurisdiction. Therefore we certified to the Supreme Court the question as to our jurisdiction. On November 17, 1915, the Supreme Court, in an opinion by Chief Justice Phillips, answered the question certified by holding that the amount involved was determined by the consolidations and that this court had jurisdiction. 180 S. W. 95.

We therefore conclude that appellee's motion, if it may be so styled, to dismiss the appeal, should be overruled.

It is urged by appellee that in the instant case the plaintiffs in the causes consolidated were not the same, in that in one Adams and Brannin were the plaintiffs, while in the other Adams alone was plaintiff. But since the consolidation in the county court was by agreement, we think this contention without merit. While it is true that jurisdiction may not be conferred by agreement of parties, yet we can assume, and we think properly, that by such agreement Brannin assigned his interest in the cause of action to Adams, and that thereafter Adams, in fact as well as in name, was the sole plaintiff.

Treating the two justice court suits as consolidated in the county court as one cause of action, we will briefly set out the facts and pleadings in so far as we may find it necessary for this opinion. On December 19, 1909, plaintiff shipped from Benjamin, Tex., two carloads of cattle, 50 in number, with destination, Ft. Worth. Plaintiff in his amended petition alleged that such shipment was made under an oral contract by and between the agent of the defendant and the plaintiff, by the terms of which defendant agreed to transport his (plaintiff's) said cattle over the lines of the defendant and its connecting lines from Benjamin to Ft. Worth, and to deliver same to plaintiff at Ft. Worth in time for the market of the 21st day of December, 1909, or December 20th; both dates being

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

alleged in different portions of the petition; that, in pursuance of the terms of said contract, plaintiff, by direction of said agent of defendant, delivered to defendant in its shipping pens at Benjamin on the 18th day of December said cattle. It was alleged that the shipment was negligently and carelessly handled, and delayed, and that by reason of said negligence said cattle were greatly shrunken and drawn and sold for much less than they would have brought had they been shipped with due care and despatch. Defendant answered, among other defenses, that said shipment was made under and by virtue of a written contract executed by plaintiff and defendant's local agent at Benjamin, by the terms of which contract defendant limited its liability to injuries received while on its own line, and that, if any injuries were suffered by said cattle, the same were not received while on the line of the defendant. The shipment was carried over the line of the defendant from Benjamin to Chillicothe, and there delivered to the Ft. Worth & Denver City Railway Company for further transportation to Ft. Worth. Plaintiff recovered judgment, and the defendant appealed.

For the purpose of this opinion, we do not find it necessary to take up seriatim the ten assignments presented in appellant's brief, but will only discuss the following questions:

(1) Was the shipment made under an oral contract, as pleaded by plaintiff, or under the written contract, as pleaded by defendant?

(2) The right of defendant to limit its liability to injuries received on its own line.

(3) Does the evidence show that any injury to said shipment was received while on defendant's line?

[2] Upon the question of whether the shipment was made under a written or an oral contract, we will refer to some of the evidence of plaintiff, Tom Adams, who testified on direct examination, in part, as follows:

"I made an oral contract with the agent of the Orient here at Benjamin a few days before the 19th of December, 1909, for the shipment of two cars of cattle from Benjamin to Ft. Worth, Tex. I think I first phoned the agent, a Mr. Glass, and asked him when I could get the two cars for this purpose, and he said I could get them right away, for he had plenty of cars on the siding here at Benjamin. I brought the cattle in during the 18th of December, 1909, which was Saturday, and left them in the stock pens by permission of the agent during that night. He told me there would be a train through the next day which would make the Ft. Worth market for Monday, and I made the oral agreement with him to ship them on the 19th. * * * We loaded the cattle about 8 o'clock p. m. on that day, the 19th day of December, 1909, and left Benjamin shortly afterwards, and arrived at Ft. Worth about 3:15 a. m. December 21, 1909."

Upon cross-examination the witness was shown a written contract, and identified his signature to same, and said it was a contract he made with the Kansas City, Mexico & Orient Railway Company of Texas to ship these cattle. The witness was also shown a written contract which he identified as a contract signed by him with the Ft. Worth & Denver City Railway Company at Chillicothe for these same two cars of cattle. The witness was also shown a written report of the condition of these cattle at Wichita Falls, and admitted his signature to same, and, in answer to questions, testified:

"Yes, I knew at the time that I talked to the agent at Benjamin about shipping these cattle that we would sign up a written contract before we left with them. I have been shipping cattle to the market for years and knew that we always have to sign up a written contract. Yes, we always sign a new contract at Chillicothe with the Denver agent."

On redirect, Mr. Adams was asked by his attorney if he had ever shipped any cattle from here to Ft. Worth when he did not go with them, and he answered that he had done so, and he was then asked if they required him to sign a contract, and he said, yes, he had always signed up a written contract whether he went, or sent any one with them, or not.

We believe from the evidence quoted that it is patent that it was contemplated by the plaintiff and the agent of the defendant, from the time of the first conversation between them, with reference to the shipment, that said shipment would be made under a written contract to be signed by both parties. In T. & P. Ry. Co. v. Byers Bros., 73 S. W. 427, the Court of Civil Appeals for the Fourth District held that where shippers, at the time they delivered cattle to the carrier, expected to sign a written contract, which they afterwards signed, said written contract governs on the question of the carrier's liability. In C., R. I. & P. Ry. Co. v. Halsell, by this court, 36 Tex. Civ. App. 522, 81 S. W. 1243, the same principle is announced. See, also, Railway Co. v. Wright, 24 Tex. Civ. App. 291, 58 S. W. 846; Id., 27 Tex. Civ. App. 198, 64 S. W. 1001; Railway Co. v. Harris, 30 Tex. Civ. App. 179, 70 S. W. 335; H. & T. C. Ry. Co. v. Smith, 44 Tex. Civ. App. 299, 97 S. W. 836. Therefore we hold that the terms of the written contract control in this case.

[3] The second question presented, that is, as to whether a railroad may limit by contract its liability to damages received on its own line, is determined, that is, as to an intrastate shipment, upon the issue as to whether the contract is for a through shipment or only for a shipment over the initial carrier's line. Without attempting to set out in this opinion said contract in full, it will only be necessary to state that by the terms thereof appellant company undertook to ship the two cars of cattle from Benjamin to Chillicothe "consigned to French Webb Commission Company, Ft. Worth, Tex." The second paragraph of said contract reads as follows:

"That the first party is exempt from liability for loss or damage arising from derailment, collision, fire, escapement from cars, heat, suffo-

cation, overloading, crowding, maiming—or other accident or causes not arising from the negligence of the first party."

The eleventh paragraph is to the following effect:

"That in case the live stock mentioned herein is to be transported over the road or roads of any other railroad company, the first party shall be released from liability of every kind after said live stock shall have left its road, excepting to protect the through rate of freight named herein. It is expressly agreed, however, that the conditions of this contract shall insure (inure) to the benefit of all carriers transporting the live stock shipped hereunder, unless they otherwise stipulate, but in no event shall one carrier be liable for the negligence of another."

In G., H. & S. A. Ry. Co. v. Jones, 104 Tex. 92, 134 S. W. 328, the Supreme Court, speaking through Judge Brown, held that article ·331a, Revised Statutes 1895, article 731, Vernon's Sayles' Texas Civil Statutes, did not apply to contracts specially limiting the liability of the initial carrier to damages received on its own line, but only to through shipments. Upon this question the opinion, in part, reads as follows:

"Upon its face the contract of shipment expresses the agreement to be that the first company is to transport the cattle to the end of its line at Placedo, and there to deliver the same to the Galveston, Harrisburg & San Antonio Railroad Company, limiting the liability of each company to damages arising upon its own line. To bring a contract of this character within the terms of article 331a, the contract entered into by the first carrier must·be for carriage from the point of shipment to the destination, and the shipment must be received and carried by the connecting carriers under that contract. There being in this case no contract for through shipment, the fact that the second company received and transported the cattle is not sufficient to create the joint liability declared by article 331a, and the Court of Civil Appeals erred in so holding. In order to bind the second or subsequent companies jointly with the first, or with any of the other companies, there must be something more than receiving and transporting the goods, or property, because the law requires the carrier to so receive and transport such freight when tendered to it. Ft. Worth & D. C. R. R. Co. v. Williams, 77 Tex. 125, 13 S. W. 637."

See, also, S. A. & A. P. Ry. Co. v. Chittim, 135 S. W. 747. Hence we must decide the second question raised adversely to appellee.

Plaintiff, who accompanied the shipment, testified:

"We left Benjamin shortly after 8 o'clock that evening perhaps about 8:30 p. m., and went right through to Chillicothe. Do not remember of stopping to pick up any more stock, to set out any cars while on the Orient road.

We stopped at Medicine Mound a short while to meet a train. It is about 53 miles from Benjamin to Chillicothe. Yes, I have said that the Orient road gave us a good run and that I had no complaint to make of its run or handling. The delays and jolts were on the Denver."

As will be seen, there is no evidence to support the allegation of negligence of the defendant or injuries to the cattle while the latter were on defendant's line.

[4] The question discussed above having been properly presented by assignment in appellant's brief, we hold that said assignments should be sustained, and this judgment reversed.

It further appearing the evidence was fully developed in the trial court, and that no good purpose could be subserved by remanding this cause for another trial, the judgment is hereby reversed, and judgment here rendered for appellant.