GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY ET AL v.
T. B. JONES.

No. 2119.   Decided February 15, 1911.

**1.—Carriers—Connecting Lines—Contract—Statute.**

The initial carrier having taken cattle for transportation under a contract to transport and deliver to a connecting line for carriage to a station thereon,

guaranteeing a through rate of freight but limiting the liability of each carrier to injuries received on its own line, the second carrier did not, by receiving the cattle and transporting them to destination, which it had no right under the law to refuse to do, make the contract a joint one for through carriage, on which each would become liable for injuries on the line of the other. The contract was not a through one and article 331a, Revised Statutes, did not apply to it. (Pp. 95, 96.)

**2.—Practice in Supreme Court.**

Rulings of the appellate court which did not affect the judgment of the trial court wil not be considered on writ of error. (Pp. 96, 97.)

**3.—Connecting Lines—Through Cars—Charge.**

The initial carrier was not bound by law to deliver its loaded cars to a connecting line for transportation to destination in them, and a charge which restricted their right to refuse such delivery to cars where the shipment (live stock) would not probably be damaged thereby was erroneous. It would be liable only if the unloading was done in an improper time or manner or was unnecessarily delayed. (P. 97.)

**4.—Same.**

Instruction upon the right of the initial carrier to refuse to deliver its cars to a connecting line in the absence of contract with the shippers so to do, held improperly refused. (P. 98.)

**5.—Damages—Transportation of Cattle—Market Value.**

The damages for death of or injury to cattle in transportation are to be estimated on the basis of "market" rather than "reasonable" value, but the failure to give market value as the test was not ground for reversal when all the testimony to which it related was as to market value. (P. 98.)

**6.—Carriage of Live Stock—Duty to Feed and Water—Charge.**

Damages having been claimed for delay of cattle in transportation, they having been unloaded, at the point where delay was charged, for food, rest and water after 28 hours confinement in the cars without either, it was error to refuse a charge properly defining the carrier's duties in this respect under article 386, Revised Statutes, and relieving it from liability for delay caused by its compliance therewith. (Pp. 98-100.)

**7.—Carriage of Live Stock—Delivery to Connecting Road—Duty to Load.**

The initial carrier having unloaded cattle from its cars at its terminus, refusing to let the cars be used by the connecting line thence to destination, was only required to deliver the cattle to the connecting company for transportation; a charge requested by the latter that it was the duty of the first carrier to load the cattle on the cars of the connecting line was properly refused. (Pp. 100, 101.)

Error to the Court of Civil Appeals, Fourth District, in an appeal from Valverde County.

Jones sued the Galveston, H. & S. A. and the St. Louis, B. & M. Railway Companies and had judgment. Each of the defendants obtained writ of error on the affirmance of the judgment against it on its appeal.

*Baker, Botts, Paker & Garwood, W. B. Teagarden* and *Boggess & Davidson,* for plaintiff in error Galveston, H. & S. A. Ry. Co.—That the two carriers were not connecting carriers in contemplation of the statute, and the Galveston, H. & S. A. Ry. Co. was not liable for any wrong or negligence of the Brownsville road. Railway Co. v. Lynch, 97 Texas, 29, 75 S. W., 486; Railway Co. v. Randle, 18 Texas Civ. App., 388; Railway Co. v. Short, 51 S. W., 261; Railway Co. v. Arnett, 97 S. W., 57; Railway Co. v. Grove, 48 Texas Civ. App., 45.

That the Galveston, H. & S. A. Co. was bound to feed and water the cattle at San Antonio, and the delay caused thereby could not, as a matter of law, be charged to it. Railway Co. v. Carlisle, 78 S. W., 553; Railway Co. v. Warenken, 12 Texas Civ. App., 647.

All necessary time to feed and water cattle in transit must be deducted in estimating delay. Railway Co. v. Carlisle, 78 S. W., 553; Railway Co. v. Warrenken, 12 Texas Civ. App., 647.

It was the duty of the Brownsville road to deliver the cars loaded to the Galveston, H. & S. A. Co. Texas & N. O. Ry. Co. v. Gulf & I. Ry. Co., 54 S. W., 1034; Railway Co. v. Lone Star Salt Works, 19 Texas Civ. App., 676.

*Claude Pollard* and *R. J. McMillan*, for plaintiff in error St. Louis, B. & M. Ry. Co.—The contract did not come within the purview of article 331a, and your petitioner was not liable for damages which occurred on both lines. Texas-Mexican Ry. Co. v. Gallagher, 64 S. W., 809; Railway Co. v. Swenson, 25 S. W., 47, 48.

The fact that the refusal by the carrier to allow its cars to leave its termini may result in damage to cattle does not place the duty upon the carrier to allow its cars to leave its own line. Louisville & N. Ry. Co. v. Central Stock Yards Co., 212 U. S., 132; Gulf, C. & S. F. Ry. Co. v. State, 120 S. W., 1028; Houston & T. C. Ry. Co. v. Buchanan, 42 Texas Civ. App., 620; Railway Co. v. Loving, 98 S. W., 452; Railway Co. v. Everet, 99 Texas, 603; Railway Co. v. Barrow, 94 S. W., 176.

Market value is the basis for measurement of damages. Railway Co. v. Klepper, 24 S. W., 567; Railway v. Stanley, 29 S. W., 806; Gulf, C. & S. F. Ry. Co. v. Stanley, 89 Texas, 42; Railway Co. v. Meeks, 74 S. W., 331; Railway Co. v. Cushney, 95 Texas, 311; Galveston, H. & S. A. Ry. Co. v. Powers, 117 S. W., 461.

*John J. Foster*, for defendant in error.—The measure of damage to a shipment of cattle injured from negligence of the carrier, is the difference between their value in the condition in which they did arrive, and the condition in which but for such negligence, they would have arrived even though they are not shipped for sale, but for pasturage. Gulf, C. & S. F. Ry. v. Stanley, 89 Texas, 42; Gulf, C. & S. F. Ry. v. Hume, 87 Texas, 211; Galveston, H. & S. A. Ry. v. Johnson, 19 S. W., 867; Gulf, C. & S. F. Ry. v. Batte, 94 S. W., 345; St Louis, I. M. & S. Ry. v. Berry, 93 S. W., 1107, 42 Texas Civ. App., 470; St. Louis, I. M. & S. Ry. v. Dodson, 97 S. W., 523; Houston & T. C. Ry. Co. v. Williams, 31 S. W., 556; Gulf, C. & S. F. v. Simmons, 28 S. W., 825.

The St. Louis, Brownsville & Mexico Railway Company was required by the order of the Railroad Commission, known as Circular No. 199, and also under art. 4574, Revised Statutes, to deliver its loaded cars to the Galveston, H. & S. A. Ry. Co., at Placedo, the junction point for transportation to their destination. Rev. Stat., art. 4574; Gulf, C. & S. F. v. State, 120 S. W., 1028; Wisconsin, M. & P. R. Co. v. Jacobson, 179 U. S., 296.

While a carrier may be entitled, under the law, to keep its own cars on its own line of railroad, yet when it accepts freight that is

more or less perishable, like cattle, for transportation to a point beyond
its own line, and such cattle are injured as a consequence of the delay
necessarily incident to the. unloading, reloading and transfer of such
cattle to other cars, such carrier is responsible for such damages as
proximately result from its act of unloading and reloading the cattle.
Ft. Worth Ry. Co. v. Chicago, R. I. Ry. Co., 47 Texas Civ. App., 304;
Texas & P. Ry. Co. v. Scoggin & Brown, 40 Texas Civ. App., 526;
Gulf, C. & S. F. Ry. v. Terry & McAfee, 89 S. W., 792; Railway Co. v.
Latham, 88 S. W., 394; Rogers v. Texas P. Ry. Co., 94 S. W., 158.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

Jones entered into a verbal contract with the agent of the St. Louis,
Brownsville & Mexican Railway Company to transport fourteen
hundred head of steer cattle from Caesar, Texas, a station on the said
railroad, to Placedo, at which place it connected with the Galveston,
Harrisburg & San Antonio Railroad Company, there to deliver the
cattle to the last named company to be by it transported to Standart,
in Kinney County. By the terms of the parol contract the cattle
were to be shipped through in the same cars. At Robstown, a station
on the St. Louis, Brownsville & Mexico Railway Company between
Caesar and Placedo, an agent of that road entered into a written
contract with Jones, which we find in the record, by which the said
railway company undertook to transport the cattle to Placedo, the
end of its line, there to be delivered to the Galveston, Harrisburg &
San Antonio Railroad Company over which the stock were way-billed
to Standart. The contract provided that the St. Louis, Brownsville &
Mexico Railway Company should guarantee the rate of freight and also
provided that neither carrier should be liable for injuries or damages
incurred beyond its own line. The cattle were transported by the
first named company to Placedo and there tendered to the Galveston,
Harrisburg & San Antonio Railroad Company in the cars as loaded,
upon condition that the latter company would furnish to the first
company a like number of stock cars to be used until the return of
the cars in which the cattle were shipped. The second carrier was
ready to accept the cattle in the cars, but declined to furnish cars to
the St. Louis, Brownsville & Mexico Railway Company. After con-
siderable delay the cattle were unloaded from the cars of the first
company and were reloaded in the cars of the Galveston, Harrisburg
& San Antonio Railroad Company. The Court of Civil Appeals finds
that the second company recognized the contract made by Jones with
the first company. The cattle were injured by the unloading and
reloading at Placedo, and probably this treatment may have caused
them to suffer injury between that place and the final destination.

The Galveston, Harrisburg & San Antonio Railroad Company
carried the cattle in one train to San Antonio where it unloaded and
fed them and gave them water and rest. Then it carried them to
the place of destination in separate trains in which there were other
cars than those loaded with the stock. The court finds that the injury
occurred in the unloading and handling the cattle at Placedo and in
the transportation from Placedo to Standart.

The Court of Civil Appeals held that the contract of shipment

made between the defendant in error and the St. Louis, Brownsville & Mexico Railway Company constituted a through shipment from Caesar on the road of the said company to Standart over the line of the Galveston, Harrisburg & San Antonio Railroad Company, and that the latter road acted upon and recognized said contract, therefore, that the case comes within the terms of article 331a, Revised Statutes:

"All common carriers over whose transportation lines, or parts thereof, any freight, baggage or other property received by either of such carriers for through shipment or transportation by such carriers between points in this State on a contract for through carriage recognized, acquiesced in or acted upon by such carriers shall, in this State, with respect to the undertaking and matter of such transportation, be considered and construed to be connecting lines, and be deemed and held to be the agents of each other, each the agent of the others, and all the others the agents of each, and shall be deemed and held to be under a contract with each other and with the shipper, owner and consignee of such property for the safe and speedy through transportation thereof from point of shipment to destination; and such contract, as to the shipper, owner or consignee of such property shall be deemed and held to be the contract of each of such common carriers; and in any of the courts of this State any through bill of lading, waybill, receipt, check or other instrument issued by either of such carriers, or other proof showing that either of them has received such freight, baggage or other property for such through shipment or transportation, shall constitute prima facie evidence of the subsistence of the relations, duties and liabilities of such carrier as herein defined and prescribed, notwithstanding any stipulations or attempted stipulations to the contrary by such carriers, or either of them."

Upon its face the contract of shipment expresses the agreement to be that the first company is to transport the cattle to the end of its line at Placedo and there to deliver the same to the Galveston, Harrisburg & San Antonio Railroad Company, limiting the liability of each company to damages arising upon its own line. To bring a contract of this character within the terms of article 331a, the contract entered into by the first carrier must be for carriage from the point of shipment to the destination, and the shipment must be received and carried by the connecting carriers under that contract. There being in this case no contract for through shipment, the fact that the second company received and transported the cattle is not sufficient to create the joint liability declared by article 331a, and the Court of Civil Appeals erred in so holding. In order to bind the second or subsequent companies jointly with the first, or with any of the other companies, there must be something more than receiving and transporting the goods, or property, because the law requires the carrier to so receive and transport such freight when tendered to it. Ft. Worth & D. C. R. R. Co. v. Williams, 77 Texas, 125.

The Court of Civil Appeals erred in its construction of article 331a and its application of that provision of the statute to the contract in this case, but the error is unimportant because the trial court

instructed the jury that the railroad companies were each liable only for the damages which accrued upon its own line. As the judgment must be reversed and the cause remanded for another trial, we deem it proper to correct the error of the Court of Civil Appeals so that it may not mislead the trial court.

The second, third, fourth and sixth assignments of error relate to rulings of the Court of Civil Appeals which did not in any way affect the judgment of the District Court, therefore, they are unimportant in this investigation and will not be considered.

The St. Louis, Brownsville & Mexico Railway Company assigns as error the giving by the trial court of the following instruction:

"You are charged that railway companies are not required by law to permit their cars loaded with cattle to go beyond the termini of their own lines, unless the refusal to do so would probably result in damage to the cattle; and in this connection you are charged that if the delay at Placedo was caused by the refusal of the defendant, St. Louis, Brownsville & Mexico Railway Company to permit its cars, loaded with the cattle in question, to go onto the line of the defendant Galveston, Harrisburg & San Antonio Railway Company, and the subsequent transfer of said cattle at Placedo to other cars caused said cattle to be injured—if they were injured—and you further find that the unloading and reloading of said cattle at Placedo was negligence, as negligence is heretofore defined, you are charged that said defendant, St. Louis, Brownsville & Mexico Railway Company, would be liable to plaintiff in damages for such injury, if any, to the cattle, occasioned by the delay in making said transfer at Placedo, under the instructions which have already been given you."

The charge correctly tells the jury that the railroad company was not bound to permit its cars to go onto the line of the second company, but erroneously qualified the charge thus: "Unless the refusal to do so would probably result in damage to the cattle." It being lawful for the railroad company to refuse to deliver its cars to the connecting line, it must necessarily have been lawful also for it to unload the cattle from its cars at the end of its line, therefore, if the act of unloading, itself, might cause injury, the railroad company would not be responsible for such injury as arose out of the performance of the lawful act. Gulf, C. & S. F. Ry. Co. v. State, 120 S. W., 1028. If, however, the act of unloading was done at an improper time, or in an improper manner, or was unnecessarily delayed, then the company might be liable, not for unloading the cattle, but for the negligent manner in which the act was done. The giving of this charge was error against the St. Louis, Brownsville & Mexico Railway Company upon a material point and perhaps may have seriously affected the verdict of the jury against it in the amount of damages assessed.

There are a number of assignments made by this company upon the opinion of the Court of Civil Appeals on questions which can not possibly have affected the judgment, therefore, they will not be reviewed at this time.

Vol. CIV. Supreme—7.

The said railroad company also assigns as error the refusal of the court to give this charge to the jury:

"You are instructed that the defendant, St. Louis, Brownsville & Mexico Railway Company, is a common carrier, and as such may limit its liability to damages occurring on its own line, and can not be required to furnish cars to go beyond its own line, in the absence of a contract so requiring same. If you find that the contract of shipment in question limits the defendant's liability to damages occurring upon its own line, then in arriving at the amount of damages, if any, sustained by plaintiff, you are to look only to such damages as may be shown to have occurred upon defendant's own line of road, and damages, if any, sustained in transferring said cattle to connecting carriers; and if you further find that no damages, such as alleged by plaintiff, occurred upon this defendant's line of road, or in transferring said cattle to connecting carriers, you will find your verdict in favor of this defendant."

The charge refused presented a correct statement of the law applicable to the facts of this case and we are of the opinion that it should have been given as a guide to the jury in determining what damages, if any, would be properly chargeable to that railroad company.

The trial court charged the jury that "the reasonable value at Standart, Texas, of such cattle as were so killed, or died, if any, in consequence of the negligent delays, if any, at the time they should have arrived there and in the condition they should have been in on arrival but for such negligent delays, if any," would constitute the standard by which they were to determine the amount for which the railroad company would be liable, and also charged the jury, in effect, that the difference between the value of the cattle which were injured and did not die, in the condition in which they were on arrival at Standart and what their value would have been if they had been delivered in proper condition would constitute the measure of damages in favor of the plaintiff. The complaint made against the charge is that it uses the word, "reasonable," instead of the "market" value. The market value is the proper standard by which to measure such damages and the charge should so state to the jury, but in this case we find that the witnesses all testified that they knew the market value of the cattle and testified as to what the market value would have been, so there was no injury to the plaintiff by this error.

The other assignments of error presented by the St. Louis, Brownsville & Mexico Railway Company are unimportant and therefore will not be further considered. As to that company the judgment must be reversed and the cause remanded.

The Galveston, Harrisburg & San Antonio Railroad Company presents an application containing ninety-five pages of printed matter and seventeen assignments of error, many of which we do not think important as they relate to questions which probably will not arise on another trial.

The charge of the court guarded this company against liability for injuries resulting from the negligence of the other companies, limiting the liability of the Galveston, Harrisburg & San Antonio Railroad Company to delays which occurred after the cattle were delivered to

it at Placedo. The court's charge submitted in general terms the question of unreasonable delay in transporting the cattle from Placedo to Standart. The plaintiff's petition alleges only delay at Placedo and San Antonio and, in general terms, that such delay was negligent and unnecessary. This company requested the court to give to the jury the following charge:

"You are further charged, gentlemen of the jury, that the law requires a railroad company that is transporting cattle to unload and rest and feed and water them en route, whenever this is reasonably necessary, and in computing any delay in transportation, such reasonable time as is so consumed, and the damage proximately flowing therefrom, can not be charged against such carrier.

"Applying this rule of law to the facts in this case, you are charged that if, when the cattle reached San Antonio, they were tired, famished, and needed rest, food and water; or, if the time was up, or about up, within which they should have been fed and watered and rested, then it was the duty of defendant Galveston, Harrisburg & San Antonio Railroad Company to unload and feed and water and rest the cattle there, and they are not liable for any loss or damage resulting from the delay so occasioned, nor would they be liable for the fatigue or hardships of the cattle, if any, which was necessarily incident to the prudent unloading of the cattle at that point, and if, by reason of such delay and such fatigue of the cattle, if any, as was necessarily occasioned by the stopping to rest, feed and water, and the loading and unloading with reasonable care, as above stated, of the cattle at San Antonio, they were less able to stand up and be carried forward to Standart, and if the cattle suffered injury or damage as a direct and promimate result of this condition, so caused as aforesaid, the Galveston, Harrisburg & San Antonio Railroad Company would not be liable therefor. Refused. W. C. Douglas, Judge."

Article 326 of the Revised Statutes reads:

"It shall be the duty of a common carrier who conveys live stock of any kind to feed and water the same during the time of conveyance and until the same is delivered to the consignee or disposed of as provided in this title, unless otherwise provided by special contract, and any carrier who shall fail to so feed and water said live stock sufficiently shall be liable to the party injured for his damages, and shall be liable also to a penalty of not less than five nor more than five hundred dollars, to be recovered by the owner of such live stock in any court having jurisdiction in any county where the wrong is done or where the common carrier resides."

As the charge of the court submitted the issue of negligent and unreasonable delay on the road of this company between Placedo and Standart, and there being in the petition no charge of delay on this road except at San Antonio, it is evident that the question of liability must have depended principally, if not entirely, upon the stop made by the company at San Antonio for the purpose of watering, feeding and resting the cattle. The evidence was sufficient to call for this charge. It was shown that the cattle had been delayed at Placedo in the cars of the St. Louis, Brownsville & Mexico Railway Company for seven hours and from the time of their being loaded had been upon

the cars without food, water or rest about twenty-eight hours when they reached San Antonio. The evidence, we believe, is undisputed that the cattle were in need of water, feed and rest when the train arrived at the latter place. It therefore became important to the Galveston, Harrisburg & San Antonio Railroad Company that the jury should be instructed properly with regard to its duty under those conditions.

The statute is so plain that there can be no need for argument to apply its terms to the facts of this case. If the railroad company had not stopped the cattle for food, water and rest in their condition, it would have been liable to the plaintiff for injuries arising from such failure and also to a penalty not exceeding $500 to be recovered by the plaintiff. Then, under the instruction of the court and the allegations of the petition, the jury were authorized to understand that there was an issue as to whether the delay at San Antonio was unreasonable. On this issue it was necessary for the jury to be informed as to the duty of the railroad company under the statute. If they believed from the evidence that the condition of the cattle when they arrived at San Antonio was such as to require, in the exercise of ordinary care, that they should be unloaded, fed and watered, and also given rest, then the railroad company was not liable for any damage which may have been caused by such delay, either directly or incidentally, unless the delay was itself unreasonable for some reason or the cattle were improperly handled. Such facts might constitute a complete defense against the charge of the petition that the delay at San Antonio had caused the injury for which this defendant could be held liable.

The Galveston, Harrisburg & San Antonio Railroad Company requested the court to give to the jury this charge:

"You are further charged, gentlemen, that it was the duty of the St. Louis, Brownsville & Mexico Railway Company to make the transfer of the cattle at Placedo; that is, to unload and reload the cattle, and deliver them to the Galveston, Harrisburg & San Antonio Roilroad Company, loaded in its cars, and the Galveston, Harrisburg & San Antonio Railroad Company is not, in law, chargeable with any delay, or the direct and proximate result of any delay occasioned by said transfer. Refused."

We are of the opinion that the charge was properly refused, for the reason that it expresses the duty of the connecting line to be that it load the cattle upon the cars of the Galveston, Harrisburg & San Antonio Railroad Company. Delivery to the latter road by the initial carrier was all that the law required, but this is unimportant for it does not appear that any such demand was made and this company participated in the act of unloading and reloading the cattle.

This railroad company asked the court to give a charge to the jury with regard to the duty of the plaintiff to use ordinary care to prevent any injury which might result after the cattle were delivered to him from the delay which had occurred in the transportation. It is unnecessary for us to discuss this view of the case, because the evidence is not sufficient to charge the plaintiff with negligence in

the management of the cattle after he received them from the railroad company.

For the errors which we have pointed out the judgments of the District Court and the Court of Civil Appeals are reversed as against both of the railroad companies, plaintiffs in error, and remanded to the District Court for another trial.

*Reversed and remanded.*