INTERNATIONAL & GREAT NORTHERN
RY. CO. v. KANSAS CITY PRODUCE
CO. (No. 5932.)

(Court of Civil Appeals of Texas. San Antonio.
Dec. 19, 1917. Rehearing Denied
Jan. 23, 1918.)

1. CARRIERS ⟷172—CONNECTING CARRIERS—
THROUGH SHIPMENT—BILL OF LADING.

A connecting carrier by acting on and acquiescing in a bill of lading for a through shipment issued by the initial carrier, receiving the goods, and not issuing a bill of lading of its own, indorses it and makes it its own.

2. ESTOPPEL ⟷54—KNOWLEDGE OF FACTS.

A shipper is not estopped by carrier's customary dealing with his previous shipments, of which he did not know and by exercise of ordinary diligence could not have known.

3. CARRIERS ⟷90—BILL OF LADING—DRAFTS
ATTACHED.

Drafts attached to bills of lading amount to positive instructions to carrier to collect before delivering goods.

4. CARRIERS ⟷76 — WRONGFUL DELIVERY—
ACTION—PARTIES.

The shipper of goods consigned to himself with draft attached to bill of lading, not having parted with the ownership, may sue the carrier for delivering them to another without payment of the draft.

5. CARRIERS ⟷90—CONVERSION—WRONGFUL
DELIVERY.

The carrier delivering goods shipped without production of the bill of lading and payment of the draft attached is liable for conversion.

6. CARRIERS ⟷94(4)—CONVERSION—MEASURE
OF DAMAGE.

The market value of goods at the place of their conversion by a carrier is the measure of damages.

7. CARRIERS ⟷158(1) — CONVERSION—MEASURE OF DAMAGES.

Provision in bill of lading as to the value of the property being that at point of shipment, having reference only to loss or damage, does not affect measure of damages for conversion.

Appeal from District Court, Bexar County;
S. G. Tayloe, Judge.

Action by the Kansas City Produce Company against the International & Great Northern Railway Company. From an adverse judgment, defendant appeals. Affirmed.

Cobbs & Cobbs and Davis & Eskridge, all of San Antonio, and Wilson, Dabney & King, of Houston, for appellant. Davis & Long, of San Antonio, Hart & Woodward, of Austin, and Taliaferro, Cunningham & Birkhead, of San Antonio, for appellee.

FLY, C. J. This is a suit for damages alleged to have accrued through the unauthorized surrender of large shipments of eggs to S. Guilhem & Co., without collecting certain drafts to cover the price of the eggs, which were attached to the respective bills of lading, the said eggs being converted to the use of said Guilhem & Co. It was alleged that the shipments were made by appellee, I. Tobias, doing business under the name of Kansas City Produce Company, and that one shipment of the eggs consisted of 94 cases which had been sold by appellee to

Charles S. Guilhem & Co., of Austin, Tex., at $6.10 a crate, and were shipped on March 13, 1914; that 82 cases of eggs were shipped on March 21, 1914, from San Antonio to Chicago, consigned to appellee, which were worth $5 a crate; that on March 23, 1914, 212 cases of eggs, consigned to appellee at Chicago, were delivered to appellant for shipment; that on March 27, 1914, 100 cases of eggs were delivered to appellant, and on March 28, 1914, 156 crates of eggs were delivered to the Galveston, Harrisburg & San Antonio Railway Company at Seguin, and on March 30, 1914, 249 crates of eggs were delivered to appellant for shipment each shipment of eggs being consigned to appellee at Chicago, Ill., except those shipped on March 28th, which were shipped to New Orleans; that the eggs delivered to the carrier at Seguin were delivered to appellant at San Antonio; that the eggs, all being consigned to appellee, were, without authority, delivered to Charles Guilhem & Co., and converted by them to their use and benefit. Guilhem & Co. and others were made parties defendant, all being dismissed from the suit, except appellant and the firm named. The trial was by jury resulting in a verdict and judgment in favor of appellee as against the firm and appellant for $5,033.80, and for the same sum in favor of appellant against the firm. Only the railway company appealed.

The evidence sustains the material allegations of the petition, showing that appellant had, without warrant or authority, delivered the eggs described to the firm of Charles S. Guilhem & Co., who had converted them and deprived appellee of their value.

[1] The first assignment of error assails the action of the court in permitting the bill of lading issued by the Galveston, Harrisburg & San Antonio Railway Company for the 156 crates of eggs, shipped from Seguin on March 28, 1914, to be read, for the reason that it was ex parte, hearsay, irrelevant, and immaterial, because not issued by an agent of appellant. There is no force or merit in the assignment. That the eggs were shipped over the line of the initial carrier from Seguin, and then delivered to appellant, is unquestioned, and the objections to the bill of lading were untenable. Appellant received the goods as a connecting carrier, and negligently permitted them to be converted by another. The authorities cited have no bearing on the facts of this case,

The second assignment of error is based on the assumption that the shipment of 156 crates of eggs from Seguin were never delivered to appellant, but it was abundantly proven that they were delivered to appellant, and consequently the assignment is not meritorious, and is overruled. It was practically admitted in the answer of appellant that the shipment from Seguin was delivered to it.

⟷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

It did not deny receiving the shipment, but pleaded as follows:

"And your defendant would further show that it was a connecting carrier in the shipment from Seguin, Tex., and that the liability of this defendant is regulated by the laws of Congress of the United States, this shipment being billed to other states of the United States, with privilege to stop in transit to finish loading."

The evidence shows that appellant acted upon and acquiesced in the bill of lading given by the initial carrier, and did not tender a bill of lading to appellee in lieu of the one issued by the initial carrier. The shipment was a through one from Seguin to Chicago, and appellant could have issued a bill of lading of its own when the eggs were delivered to it, but it did not do so; but accepted the shipment under the bill of lading already given, thereby indorsing and making it its own. Railway v. Turner, 42 Tex. Civ. App. 532, 94 S. W. 216.

[2, 3] The evidence did not show that appellee knew, or by the exercise of ordinary diligence could have known, of the manner in which appellant had dealt with Guilhem & Co., in connection with other shipments of eggs consigned to appellee, and it could not have been bound or estopped by such customary dealing. Appellant had no authority to deliver eggs to Guilhem & Co., without collecting drafts attached to the bills of lading. No such orders had ever been received from appellee, and the drafts attached to the bills of lading amounted to positive instructions to collect the money before the eggs were delivered. Elliott, Railroads, § 1530; Tiedeman, Commercial Paper, § 494.

[4] Appellee had full authority to institute the suit and recover the damages. Appellee had not parted with the ownership of the eggs, and the right of Guilhem & Co. to the eggs depended upon their payment of the drafts attached to the bill of lading. Railway v. Smith, 84 Tex. 348, 19 S. W. 509; Railway v. Laws, 125 S. W. 973. The fourth assignment of error is overruled.

[5] Even if Guilhem & Co. had been named as consignees, they would not have been entitled to delivery of the property until the draft was paid and the bill of lading properly produced, and the carrier would be liable if loss occurred by delivery without payment of the draft and production of the bill of lading. Elliott on Railroads, § 1429a; Railroad v. Commercial Bank, 123 U. S. 727, 8 Sup. Ct. 266, 31 L. Ed. 287; Vaughn v. Railway Co., 27 R. I. 235, 61 Atl. 695. In the present case the eggs were consigned to appellee, and the bills of lading with drafts attached gave no authority whatever for the delivery of the eggs to any one else, without the payment of the drafts. Disregarding those plain instructions, the eggs were delivered to Guilhem & Co., without the drafts being paid, and appellant is liable for the conversion of the property.

[6, 7] The witness Goldstein was properly qualified, and was authorized to swear to the market value of eggs in Austin, and, Austin being the point at which the conversion of the eggs took place, the market value there was the proper measure of damages. Carter v. Railway, 93 S. W. 681; Railway v. Rines, 37 Tex. Civ. App. 618, 84 S. W. 1092. The provision in the bill of lading as to the value of the property being that at point of shipment has reference alone to loss or damage of the property, and not to a conversion of the property by the carrier. The bills of exception do not form a basis for the assignments attacking the measure of damages fixed by the court, or the attempt to bring in review the admission of evidence as to the value of eggs in Austin where the conversion took place. Bill of exceptions No. 13 excepts to the refusal of the court to give a peremptory instruction, and bill of exceptions No. 14 seeks to point out four exceptions to the charge of the court, only one of them touching on the measure of damages, and that referring only to the testimony being insufficient to show market value in Austin, and further that it "was not a proper location of the fixing of the measure of damages." Nothing is said as to where the measure of damages should be fixed. When counsel was asked by the court as to the prices in what place the damages were to be ascertained, the reply was made:

"The proper place is largely a question; it is a matter of complicated law as to where it is, and I am making this objection to make myself safe."

What the witness testified as to market value is not shown by the bills of exception. The invoices were allowed to be used as evidence without objection, as was testimony to the effect that appellee sold the eggs for the sums indicated in the invoices, and those invoices show the exact amount found by the jury. There is no merit in the fifth and sixth assignments of error, and they are overruled.

The judgment is affirmed.