FT. WORTH & D. C. RY. CO. et al. v. KEMP.
(No. 1414.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 27, 1918. Rehearing Denied Jan. 8, 1919.)

1. CARRIERS ⊙⟿173—CONNECTING CARRIERS—"THROUGH BILL OF LADING."

A shipper's order bill of lading which provided that the rights of shipper and all carriers transporting the grain were to be fixed thereby as to the entire transportation between points necessitating the use of two connecting lines, is a "through bill of lading," within the terms of Vernon's Sayles' Ann. Civ. St. 1914, arts. 731, 732, making carriers jointly liable notwithstanding it stipulates otherwise.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Through Bill of Lading.]

2. JUDGMENT ⊙⟿252(1) — CONFORMITY TO PLEADINGS—DAMAGES—APPORTIONMENT.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, subd. 25, providing that, where freight has been damaged in transit over two or more railroads, the damage shall be apportioned among them, does not require the apportionment of damage, where defendants have not filed pleadings asking apportionment.

Appeal from Hardeman County Court; D. E. Magee, Judge.

Suit by G. G. Kemp against the Ft. Worth & Denver City Railway Company and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Thompson, Barwise & Wharton, of Ft. Worth, and J. A. Clarke, of Quanah, for appellants.

Marshall & Perkins, of Quanah, for appellee.

BOYCE, J. Appellee, G. G. Kemp, sued appellants, the Ft. Worth & Denver City Railway Company, and J. L. Lancaster and Pearl Wright, receivers of the Texas & Pacific Railway Company, for the value of 297⁵/₆ bushels of wheat, alleged to have been lost out of a car of wheat shipped by appellee over the lines of the said railway companies, from Chillicothe, Tex., to Dallas, Tex. Judgment for the value of the wheat was rendered against the defendants jointly. Without making a detailed statement as to how the question is raised, we may say that the principal question of law presented on this appeal is whether the grain was received for shipment "on a contract for through carriage, recognized, acquiesced in or acted upon by such (defendant) carriers," so as to bring the liability incurred in such shipment within the terms of Vernon's Sayles' Revised Statutes, arts. 731 and 732.

[1] The shipment was made under a shipper's order bill of lading issued by the Ft. Worth & Denver City Railway Company, upon receipt of the wheat at Chillicothe. By the terms of this instrument it was recited that—

The wheat was "received from G. G. Kemp Grain Company at Chillicothe, Texas, * * * to be transported from —— to ——, there to be delivered as stated below, unless destined beyond; then the Ft. Worth & Denver City Railway Company agrees as agent for the shipper, to tender the shipment to a connecting common carrier en route to destination, consigned to order of G. G. Kemp Grain Company, destination, Dallas, Texas."

This bill of lading contained many provisions; the only ones material, in our opinion, to a determination of the question we are considering, being as follows:

"It is mutually agreed as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in any or all of said property, that every service to be performed by any carrier shall be subject to all conditions, whether printed or written, herein contained, and which are agreed to by the shipper and accepted for himself and his assigns."

"If shipment is destined to a point off this company's road, it is agreed that this is no contract for through shipment and this company's liability as a common carrier shall terminate on tender of delivery to a connecting carrier."

It will be noted that, by the terms of the stipulation above quoted, the rights of the parties, shipper and all carriers transporting the grain, were attempted to be fixed as to the entire transportation from Chillicothe to Dallas. The shipper was not at liberty to make a new contract with any connecting carrier, and the initial carrier, the Ft. Worth & Denver City Railway Company, agreed in effect that the connecting carrier's transportation of the shipment would be under the conditions of such contract. This stipulation, as well as the very attributes of a shipper's order bill of lading, show that it was intended that this bill of lading was to be the one and only contract that should be made concerning the shipment, and that it would determine the rights of all the parties interested in the transportation. It seems to us, therefore, that it is a "contract for through carriage," or a "through bill of lading," within the terms of article 731, Vernon's Sayles' Civil Statutes; Standard Oil Co. v. U. S., 179 Fed. 621, 103 C. C. A. 172.

Appellants contend that the declaration that "this is no through contract" and the limitation of liability refutes this construction of such contract. But it was evidently the intention of the Legislature that the character of the contract was to be determined by some other test than by such stipulations, for it is expressly provided that, if the shipment is made on such contract for

through carriage or through bill of lading, then the relations and liabilities as fixed by the law follow, "notwithstanding any stipulations or attempted stipulations to the contrary by such carriers, or either of them." The feature of the contract we' have noted above distinguishes it, we believe, from any of the contracts under consideration in the cases referred to by the appellants. In such contracts, 'the initial carrier merely undertook to transport the property over its own line and deliver to its connecting carrier for further transportation, but did not agree that the further transportation should be made under the conditions of the contract made with the initial carrier. This contract was acquiesced in and acted upon by the Ft. Worth & Denver City Railway Company because it made the contract itself and carried the wheat under it. The Texas & Pacific Railway Company accepted the shipment, transported it without requiring a new contract, and is now pleading that it transported such shipment under such contract, and, claiming the benefit of its provisions, it has also acquiesced in and acted upon said contract. We conclude, therefore, that there was no error in holding that the liability of the appellants was to be determined by the provisions of articles 731 and 732, Vernon's Sayles' Civil Statutes, and the judgment against the defendants jointly was proper. The following authorities, though not directly in point, tend in some measure to sustain these conclusions: St. Louis Southwestern Railway Co. v. Hughston Grain Co., 186 S. W. 429; Elder Dempster v. Ry. Co., 105 Tex. 628, 154 S. W. 979; I. & G. N. Ry. Co. v. Kansas City Produce Co., 200 S. W. 254.

[2] The appellants complain that there was no apportionment of the damages between them, and contend that this was necessary under the terms of subdivision 25, art. 1830. There was no pleading by either of the defendants, asking for an apportionment of the damages, and judgment over against the other. At the request of the appellants, an issue was submitted to the jury, asking a finding as to the amount of damages sustained on each line of road, and the jury answered these issues: "We have no way of telling." Article 1830, subd. 25, is merely a venue statute, imposing no new liability and providing that all carriers participating in a shipment might be sued in the one action whether they are jointly liable or not. M., K. & T. Ry. Co. v. Elliott, 99 Tex. 286, 89 S. W. 767. If liability of the carriers is found to be joint and several, as here, plaintiff in the suit is obviously not concerned with any question of apportionment of the damages; and, if the defendants should desire that the damages be apportioned, they should, by proper pleading and evidence, present the issue as between themselves. This they did not do and

are in no position to resist the payment of plaintiff's judgment, because this issue was not determined. Texas Central Railway Co. v. McCall, 166 S. W. 925; G., H. & S. A. Ry. Co. v. Young & Webb, 148 S. W. 1113.

The only other question presented concerns the sufficiency of the evidence to sustain the finding as to the loss of the wheat. The evidence clearly made an issue on this question for the determination of the jury, and we do not think we would be justified in disturbing a finding either way thereon.

The judgment is affirmed.

---

⊚⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes