CHICAGO, R. I. & G. RY. CO. v. HALLAM. (No. 969.)

(Court of Civil Appeals of Texas. El Paso. May 1, 1919.)

1. CARRIERS �köm230(6) — CARRIAGE OF LIVE STOCK—INJURY TO SHIPMENT—DIRECTION OF VERDICT—CONNECTING CARRIERS.

In action by shipper of live stock against an initial carrier, it was not error to refuse a peremptory instruction 'for defendant, where there was evidence to show that some damage was inflicted to the shipment upon defendant's line, for which it would be liable.

2. JUDGMENT ⊱⇒256(5) — RENDITION — CONFORMITY TO FINDINGS OF JURY—PARTIES.

In an action for damages to a shipment of live stock brought against connecting carriers, where the findings of the jury required a judgment against all the defendants, it was fundamental error to render a judgment against one alone, since a judgment must conform to the facts found by the jury; and, while the court may set such findings aside, it cannot render judgment contrary thereto.

3. CARRIERS ⊱⇒219(7) — CARRIAGE OF LIVE STOCK—THROUGH SHIPMENTS — STATUTES — APPLICABILITY.

Where live stock was shipped over the lines of connecting carriers, but each carrier made an independent contract with the shipper, defendant, which was the initial carrier, limiting its liability to its own line, and the transportation being intrastate only, Rev. St. 1911, arts. 731, 732, relating to contracts for through shipment recognized or acquiesced in by the carriers, had no application, and .defendant was not liable for damages accruing upon the lines of the connecting carriers.

Appeal .from Young County Court; W. P. Stinson, Judge. ·

Action by R. G. Hallam against the Chicago, Rock Island & Gulf Railway Company and others. Judgment for plaintiff against defendant named, and such defendant alone appeals. Reversed and remanded.

C. W. Johnson, of Graham, and R. M. Rowland and Lassiter & Harrison, all of Ft. Worth, for appellant.

Marshall & King, of Graham, for appellee.

HIGGINS, J. Hallam brought this suit against Chicago, Rock Island & Gulf Railway Company, Texas & Pacific Railway Company, and Atchison, Topeka & Santa Fé Railway Company, to recover damages to a carload of cattle shipped by him from Graham, Tex., to Post, Tex., alleged to have been sustained .by rough handling and delay in transportation. The shipment was intrastate, and moved from Graham to Ft. Worth over the line of the first named defendant, hereinafter referred to as the Rock Island; thence to Sweetwater over the line of the Texas & Pacific; thence to Post over the line of the Panhandle & Santa Fé Railway Company. The through freight rate was paid to the initial carrier when it received the cattle. In response to special issues the jury found that defendants were negligent in the handling of the shipment from Graham to Post, and did not deliver the same at Post with reasonable speed and diligence, and that by reason of such negligence and delay some of the animals were killed and the balance depreciated in value. Other findings established the amount of damage. Upon the findings indicated judgment was rendered in favor of Hallam for $574.95 against the Rock Island, and that he take nothing against the Texas & Pacific Railway Company and Atchison, Topeka & Santa Fé Railway Company. From this judgment the

Rock Island appeals. The other facts pertinent to the decision will be indicated in the course of the opinion.

## Opinion.

[1] 1. The first assignment complains of the refusal of a peremptory instruction in favor of appellant. In this there was no error for the reason that there is evidence to show that there was some damage inflicted upon appellant's line for which it would be liable.

[2] 2. Upon the findings of the jury judgment should have been rendered against the three defendants, whereas, it was rendered against the Rock Island only. This was fundamental error which would necessitate reversal because a judgment must conform to the facts found by the jury. The court can set aside the findings of the jury, but it cannot render judgment contrary thereto. In this connection it may be noted that the Atchison, Topeka & Santa Fé Railway Company had no connection with the shipment, though the jury has made findings establishing a liability on its part.

3. We shall not attempt to follow the remaining specifications of error as they are presented in the brief. They all relate to the controlling question in this case, namely: The applicability of articles 731, 732, R. S., so as to render the Rock Island liable for damages accruing upon the lines of the connecting carriers. The bill of lading issued by appellant upon receipt of the cattle at Graham, eliminating irrelevant portions, reads:

"Live Stock Bill of Lading.

"Executed at Graham, Texas, Station, 12/14, 1916.

"This agreement, made between the Chicago, Rock Island & Gulf Railway Company, of the first part, herein called the carrier, and R. G. Hallam, of the second part, herein called the shipper.

"Witnesseth, that for the considerations and the mutual covenants and conditions herein contained, the said carrier acknowledges receipt at Graham, Texas, from, and agrees to transport for, the shipper the live stock described below, together with the parties in charge thereof, as hereinafter provided, viz.: One car said to contain 38 head of native cattle from Graham, Texas, to Ft. Worth en route to Post, Texas, consigned to R. G. Hallam, at the rate of the legal published tariffs. * * *

"Second. That the live stock covered by this contract is not to be transported within any specified time nor delivered at destination at any particular hour, nor in season for any particular market; and that this contract is only an agreement for the movement of said stock over the railway line of the carrier between the stations named, and it is not nor shall it be construed as a contract for through shipment over any railway line except that of the carrier. * * *

"Twelfth. It is further stipulated and agreed between the parties hereto, that in case the live stock mentioned herein is to be transported over the roads of any other railroad company, the said carrier shall be released from liability of every kind after said live stock shall have left its road, and the shipper hereby so expressly stipulates and agrees, it being distinctly understood that the liability of the Chicago, Rock Island & Gulf Railway Company in respect to said live stock, and under this contract, is limited to its line of railway and will cease and its part in this contract be fully performed upon delivery or tender to its next connecting carrier of the live stock mentioned herein and receipted for hereby. The understanding of both parties hereto being that the carrier shall not be held or deemed liable for anything in connection with said live stock beyond its own line of road, excepting to protect the through rate of freight named herein. It is expressly agreed, however, that the conditions of this contract shall inure to the benefit of all carriers transporting the live stock shipped hereunder, unless they otherwise stipulate, but in no event shall one carrier be liable for the negligence of another. If said live stock are received from a connecting carrier, and the shipper requires the said live stock to be transported in the cars in which they reach this carrier's line, he assumes all responsibility for the kind and condition of said cars, and the manner in which they were bedded and the live stock loaded, and waives any right to hold this carrier liable for any delay, damage or injury to said live stock which occurred prior to the exact time at which said live stock were received by this carrier for transportation.

"*Notice.*—This is not a contract over any line except the Chicago, Rock Island & Gulf Railway Company, and agents will not make it to any point off said company's line. R. G. Hallam, Shipper, per J. M. Andrews. C. S. Wynne, Authorized Agent of the Chicago, Rock Island & Gulf Railway Company."

Upon the arrival of the cattle at Ft. Worth they were delivered to the Texas & Pacific Railway Company, and unloaded in the pens. An inspection by the duly constituted authorities disclosed that they were tick infested, and under the authority of the live stock sanitary commission of Texas they were dipped and held several days before being permitted to proceed to their destination. The cattle then moved from Ft. Worth to Sweetwater over the Texas & Pacific upon a written contract signed by the Texas & Pacific and Hallam, through their agents, providing for transportation "from Ft. Worth station to Sweetwater, consigned to same at Post, Texas, at published tariff rates." Other provisions of this contract need not be stated. From Sweetwater the cattle moved to Post upon a written contract signed by the Panhandle & Santa Fé Railway Company, and Hallam, by their agents, providing for transportation "from Sweetwater station to Post, consigned to R. G. Hallam, Post."

[3] Upon its face the contract, made by the Rock Island in that portion thereof first quoted, shows that such carrier only agreed to transport the cattle from Graham to Ft. Worth, and the other portions emphasize and show clearly that it was not a contract for

through shipment to Post. It also explicitly limits its liability to its own line, and provides that its liability should cease upon delivery to the connecting carriers. The facts further show that the movements over the Texas & Pacific and Panhandle & Santa Fé were made upon separate written contracts, made by them with the shipper. Articles 731 and 732 relate to contracts "for through shipment" which "are recognized, acquiesced in, or acted upon, by such carriers." In the first place, appellant's contract was not for through shipment to Post. In the second place, the movement over the lines of the connecting carriers was upon separate contracts made by each of them. Upon the facts stated appellant is not liable under the articles mentioned for the damages accruing upon the lines of the connecting carriers. Jones' Case, 104 Tex. 92, 134 S. W. 328; Railway Co. v. Adams, 182 S. W. 365; Railway Co. v. Lock, 209 S. W. 181.

Reversed and remanded as to all parties to the suit.