GALVESTON, H. & S. A. RY. CO. v. ZEMUR-RAY.  (No. 7743.)

(Court of Civil Appeals of Texas.  Galveston. June 19, 1919.  On Motion for Rehearing, Oct. 9, 1919.)

1. CARRIERS ⬤⇒180(2) — INITIAL CARRIER'S LIABILITY FOR CONNECTING CARRIER'S NEGLIGENT DELAY IN DELIVERY.

Where a car of bananas was received for shipment by defendant railway for delivery and the bill of lading recites in effect that defendant made shipment contract for itself and its connecting carrier and the latter acted thereon, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 731, 732, the defendant initial carrier is liable for connecting carrier's negligent failure to promptly notify consignee of car's arrival notwithstanding a contrary stipulation in bill of lading.

2. CARRIERS ⬤⇒185(3)—EVIDENCE SHOWING CONNECTING CARRIER'S NEGLIGENT DELAY IN DELIVERY OF SHIPMENT.

In an action against an initial carrier for connecting carrier's negligent delay in delivery of a car of bananas, evidence held sufficient to sustain the jury's findings for plaintiff.

Appeal from Galveston County Court; Geo. E. Mann, Judge.

Suit by S. Zemurray against the Galveston, Harrisburg & San Antonio Railway Company.  Judgment for plaintiff, and defendant appeals.  Affirmed.

Baker, Botts, Parker & Garwood, of Houston, W. T. Armstrong, of Galveston, and Eugene A. Wilson, of Brownwood, for appellant.

D. J. Wilson, of Galveston, for appellee.

PLEASANTS, C. J.  This suit was brought by appellee against appellant to recover damages for the alleged negligent delay in the delivery of a carload of bananas shipped over appellant's railway from Galveston, Tex., for delivery at Beaumont.

Defendant answered to the merits by general denial, pleaded contributory negligence of the plaintiff and his representatives, and the consignee and its representatives, denied that the bill of lading was a through bill of lading, alleging specially that by its terms the liability of the defendant was limited to such injuries to the freight described as might have occurred on its own line and that the defendant transported the goods to Houston, where it delivered the same to another common carrier, who in turn transported the same to Beaumont, the point of destination; that the injuries alleged by plaintiff are shown by his petition to have occurred in the city of Beaumont when they were in the possession of such connecting carrier, viz., Texas & New Orleans Railroad Company, and had passed from the possession and control of this defendant.

The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiff for the sum of $251.67.

The carload of bananas was delivered to and received by the appellant at Galveston for shipment to Beaumont.  It was transported by appellant from Galveston to Houston and turned over to its connecting carrier the Texas & New Orleans Railroad Company, by which it was transported to Beaumont and delivered to the consignee.  The consignee was not promptly notified of the arrival of the car in Beaumont, and by reason of this the bananas remained in the car until they deteriorated in value in the amount found by the jury.  The bill of lading given by the appellant when it received the shipment contains a number of blank spaces, and except in the clauses limiting, or attempting to limit, the liability of the railway, is not very definite in stating the terms of the contract of carriage.  The material portions of the bill of lading, as set out in the statement of facts, are as follows:

"Form 1556.

"The Galveston, Harrisburg & San Antonio Railway Company.

"Straight Bill of Lading—Original—Not Negotiable—Agent's B. L. No. S.

"For Use Only Between Points Within the State of Texas.

"Received of S. Zemurray ...... at ...... the following packages, contents and values unknown, in apparent good order, except as noted, marked and    numbered as per margin, to be transported from ...... (must be a station on this line) to ...... (must be a station on this

line) there to be delivered to consignee, unless destined beyond, and if destined beyond, then the Galveston, Harrisburg & San Antonio Railway Company agreed, as agent for the shipper, to tender the shipment to a connecting common carrier, en route to destination.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

(Mail address—Not for purposes of delivery.)

"Consigned to T. S. Reed Gro. Co.

"Destination Beaumont, Texas, State of . . . . . . County of . . . . . . .

"Car Initial PFE Car No. 3239."

Here follows description and weight of the contents of the car. Also the following:

"It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and to each party, at any time interested in all or any of said property, that every service to be performed by any carrier shall be subject to all the conditions, whether printed or written, herein contained, and which are agreed to by the shipper and accepted by himself and his assigns.

"Conditions.

"Section 1. No carrier or party in possession of any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, riots or strikes, or the act or default of the shipper or owner, or for differences in the weights or grain, seed or other commodities caused by natural shrinkages or discrepancies in weights, or for any vice or inherent defect in the property shipped.

"Sec. 2. If shipment is destined to a point off this company's road, it is agreed that this is no contract for through shipment, and this company's liability as a common carrier shall terminate on tender of delivery to a connecting carrier."

"Sec. 5. Property not removed by the party entitled to receive within the time required by law, or the rules and regulations of the Railroad Commission of Texas, after notice of its arrival has been duly sent or given, may be kept in car, depot or place of delivery of the carrier, or warehouse, subject to legal charge as fixed by the Railroad Commission of Texas, and to carrier's responsibility as warehousemen only; or may be at the option of the carrier removed to and stored in a public or licensed warehouse at the cost of the owner, and there held at the owner's risk, and without liability on the part of the carrier and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage."

This shipment was accepted and carried by the Texas & New Orleans Railway Company under this bill of lading.

[1] We do not think the trial court erred in holding that these facts show that this shipment was a through shipment in the purview of articles 731 and 732, Vernon's Sayles' Civil Statutes, and appellant was therefore liable to appellee for the damage to such shipment caused by the negligence of its connecting carrier. The car was received by appellant for shipment to and delivery at Beaumont. The bill of lading issued by appellant recites in effect that the contract of shipment thereby evidenced was made by appellant for itself and its connecting carrier, and the contract so made was recognized, acquiesced in, and acted upon by the connecting carrier. These facts being shown, by the express provisions of article 732, above cited, the appellant is liable to appellee for the damage caused by the negligence of its connecting carrier, notwithstanding the stipulations to the contrary in the bill of lading. St. Louis S. W. Ry. Co. v. Grain Co., 186 S. W. 429; Railway Co. v. Turner, 42 Tex. Civ. App. 532, 94 S. W. 216; Ry. Co. v. Kansas City Produce Co., 200 S. W. 254.

[2] We have carefully examined the record and conclude that the evidence is sufficient to sustain the findings of the jury.

None of the assignments presented in appellant's brief show any error which in our opinion requires, or would justify, a reversal of the judgment. It would serve no useful purpose to set out or discuss the assignments in detail; all of them are overruled, and the judgment affirmed.

Affirmed.

On Motion for Rehearing.

PER CURIAM. Rehearing denied.

LANE, J. (dissenting). Since filing of the original opinion in this case, in which I reluctantly concurred at the time it was handed down, appellant has filed its motion for rehearing, wherein it is insisted, among other things, that the undisputed evidence shows that the damage complained of was the result of negligence on the part of the Texas & New Orleans Railway Company, its connecting carrier, and not from any negligence on the part of appellant, and that all of the damage occurred after the freight left its line and its possession; that the freight damaged was shipped under the waybill or contract shown in the original opinion by the terms of which it undertook only to transport the freight to the point on its line where the same connected with its connecting carrier en route to destination; that by the terms of said contract, especially section 2 thereof, it limited its liability to such damage as might occur while said freight was on its own line and in its possession, and therefore this court erred in concluding and holding that the contract under which the shipment in question was made was one for through shipment from the initial point to the point of destination; and that under article 731, Vernon's Sayles' Civil Statutes, appellant is liable for all damages suffered by the shipper by reason of the negligence of

the Texas & New Orleans Railway Company, its connecting carrier.

The motion was refused by the majority of this court, and to this action of the court I have entered my dissent.

I do not think the contract was one for through shipment from point of shipment to point of destination. I think the contract upon its face expresses the agreement to be that the first company, the Galveston, Harrisburg & San Antonio Railway Company, is to transport the freight to a connecting point of its line with the last carrier, and there to deliver the same to its connecting carrier, to wit, the Texas & New Orleans Railway Company, limiting its liability to damages arising upon its own line. To bring a contract of this character within the terms of article 731, the contract entered into by the first carrier must be for carriage from point of shipment to destination. Where, in an intrastate shipment, the initial carrier contracts to transport freight to a point on its own line and there to deliver it to its connecting carrier, and by the terms of the contract limits its liability to damages occurring on its own line, the mere acceptance and transportation thereof by its connecting carrier to point of destination, under the original contract, does not make such contract one of through shipment as that term is used by article 731. Kansas City, M. & O. Ry. Co. v. Adams, 182 S. W. 365; G., H. & S. A. Ry. Co. v. Jones, 104 Tex. 92, 134 S. W. 328; Ry. Co. v. Hallam, 211 S. W. 809.

By section 2 of the contract in question it is provided:

"Sec. 2. If shipment is destined to a point off this company's road, it is agreed that this is no contract for through shipment, and this company's liability as a common carrier shall terminate on tender of delivery to a connecting carrier."

The undisputed facts show that the shipment was from Galveston and the place of destination Beaumont; that the line of the appellant extended in the direction of Beaumont only to Houston, where it connected with the Texas & New Orleans Railway, which extended from Houston to Beaumont; and that the freight was delivered by appellant without delay and without damage to the Texas & New Orleans Railway Company at Houston.

'All the damage complained of occurred at Beaumont while the freight was in the possession of the Texas & New Orleans Railway Company.

The laws of this state compel every railroad company chartered in this state to receive and transport freight offered to them for transportation from point of shipment on their lines where they connect with another line en route to destination. In the face of such law, the evidence should show something more than that a through shipment was made, that a price was fixed for the entire transportation and collection by the last carrier, before it ought to be held that the shipment was upon a joint contract for transportation that would render each carrier liable for failure of duty on the part of other carriers in the connecting lines.

"The mere receiving and forwarding freight delivered from a connecting line of railway is not evidence of a ratification of a through freight contract made by the railway company receiving the property from the shipper. The law compels such acts." Ft. Worth & D. C. Ry. Co. v. Williams, 77 Tex. 121, 13 S. W. 637; San Antonio & A. P. Ry. Co. v. Grady, 171 S. W. 1019, and numerous authorities there cited.

A railway company cannot be bound for damages to an intrastate shipment accruing upon the line of a connecting carrier where it limits its liability, by contract, to damages occurring upon its own line, from the fact that it performed some of the services contemplated by the contract as it is not at liberty, contract or no contract, to refuse to render the services.

Receipt of initial carrier for shipment of goods destined to point on line of connecting railroad is held not to show that the shipment was a through shipment within this article. Quanah, A. & P. Ry. Co. v. Warren, 184 S. W. 232.

Where the initial carrier agrees to transport only to a certain point, though the shipment is consigned to a point beyond, there is no through contract of shipment, necessary for joint liability of the connecting carriers. Kansas City, M. & O. Ry. Co. of Texas v. Odom, 185 S. W. 626.

It is, I think, erroneously stated in the original opinion that "the car was received by appellant for shipment to and delivery at Beaumont." Upon its face the contract made by appellant shows that such carrier only agreed to transport the freight from point of shipment, to wit, Galveston, to a point where its line connects with the line of a connecting carrier en route to Beaumont, and the other portions thereof emphasize and clearly show that it was not a contract for through shipment from Galveston to Beaumont. It expressly limits its liability to its own line and provides that its liability should terminate upon delivery to the connecting carrier. See section 2 of contract set out herein.

In Kansas City, M. & O. Ry. Co. v. Adams, 182 S. W. 365, it is held that notwithstanding Vernon's Sayles' Civil Statutes, art. 731, declaring that all common carriers over whose lines property is received for through carriage shall be deemed connecting carriers

and one the agent for the other, the initial carrier may by contract limit its liability for negligence to negligence on its own line. That the appellant did so limit its liability in this case I have no doubt.

I do not think the case of Ry. Co. v. Turner, and Ry. Co. v. Kansas City Produce Co., cited by the majority or original opinion, are at all applicable to the facts of the present case, and, as to the application of the other case cited to the facts of this case, we quote from appellant's motion as follows:

"The case of the St. L. S. W. Co. v. Grain Co., 186 S. W. 429, cited by the court, is distinguished from the case at bar in a very important and material particular. In the case at bar it is expressly stated in the contract of shipment that the defendant railroad was to act as the agent of the shipper to tender the shipment to a connecting common carrier, while in the case cited by the court, the language of the contract of shipment was as follows:

"'That this company agrees to transport only over its own line and, except as otherwise provided by law, acts only as agent with respect to the portion of the route beyond its own line.'

"This was the turning point in the decision in the case cited. We wish to call the court's special attention to the following language of the opinion:

"'This clause excludes the idea, as I think, that it was acting as the agent of the shipper over the route beyond its line, but implies that it was acting as the agent of that portion of the route (the route belonging to the International & Great Northern), and the Cotton Belt therefore acted as agent for the International & Great Northern.'

"The opinion of the court in this case, in our judgment, is contrary to the holding of the Court of Civil Appeals in the case of K. C. M. & O. Ry. Co. of Texas v. Adams, cited above."

The case having been fully developed and no liability against appellant being shown, I think the motion should be sustained, and the judgment of the trial court reversed, and judgment here rendered for appellant.