:STRICKLAND TRANSPORTATION COM-
PANY, Inc., Appellant,

v.

Warren WAGNER, Appellee.

No. 14150.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 11, 1963.

Rehearing Denied Jan. 8, 1964.

Muse, Currie & Kohen, Dallas, for appellant.

North, Blackmon & White, Corpus Christi, for appellee.

POPE, Justice.

Plaintiff, Warren Wagner, a shipper, sued Brown Express and Strickland Transportation Company, Inc., for damages to an interstate onion shipment, a commodity exempt from the provisions of the Interstate Commerce Act. Section 20, pars. (11) and (12), Title 49 U.S.C.A. Shipper obtained judgment against Strickland Company only, and it has appealed. Suit was not commenced until more than two years after the action accrued and Strickland here urges that shipper's action was barred by the two-year, instead of the four-year, statute of limitations, since the bill of lading issued by Brown Express, the initial carrier, was not the contract upon which Strickland Company, the connecting carrier, transported the produce. We agree with Strickland's contention.

On April 1, 1958, Wagner delivered six hundred sacks of onions to Brown Express at Laredo. Only onions were carried. Brown issued a bill of lading that showed

the onions were consigned to John Jung Co., Inc., 110 N. Franklin Street, Chicago, Illinois, via Dallas. Shipper contends that the bill of lading issued by Brown was also binding upon Strickland, the connecting carrier. The bill of lading shows that an "AGRICULTURE EXEMPT COMMODITY" was involved, that the charges were fixed on a flat rate basis of $300.00, plus $9.00, that the charges were to be prepaid, and there were some shipping orders. Those orders were, "RUSH THRU TO DESTINATION ALL POSSIBLE. KEEP WELL VENTILATED—PROTECT FROM SEVERE COLD WEATHER. CALL CONSIGNEE AT CHICAGO FINANCIAL 60256 PRIOR TO ARRIVAL AT CHICAGO ADVISING PROSPECTIVE ARRIVAL." That was the contract between shipper and Brown Express.

Brown provides no service beyond Dallas. The onions were there transferred from Brown's trailer to Strickland's. There is no direct evidence that Brown ever revealed that there was a bill of lading. Strickland denied it had ever received a copy of it. The undisputed evidence shows that Strickland's undertaking was entirely different from that agreed upon by shipper and Brown, as disclosed by the bill of lading. The shipper was never in touch with Strickland until after the onions were rejected at destination on April 8, 1958. Instead of a $300.00 rate, Strickland's rate was $320.00. Instead of prepaid freight, Strickland was instructed to collect the freight charges at destination. It later collected $320.00. Strickland received none of the instructions about the care of the onions in transit, nor the other instructions about communicating with the consignee. Brown made all of the arrangements with Strickland, and the only document which Brown passed on to Strickland was its freight bill. It shows that Brown was the shipper, not Wagner. It showed John Jung as the consignee, but listed his address merely as Chicago, Illinois. It showed the higher rate for carrying the onions.

In response to a request for admissions, shipper admitted that his claim was based on the bill of lading issued by Brown, that Strickland issued no bill of lading, that Brown made the arrangements with Strickland in Dallas concerning the shipment, that the shipper has no writing signed by Strickland, and "that Plaintiff (shipper) had no contact with * * * Strickland * * until the transportation had been completed and all arrangements concerning Strickland * * * were made by and between Brown and Strickland in an agreement known only to themselves." The only thing upon which shipper relies is a claimed inference which we should draw from the fact that Strickland did not have some of its records. In our opinion that would be a mere scintilla of evidence. Suit was not brought until August, 1960, more than two years after the cause accrued.

This was an interstate shipment, but the Interstate Commerce Act does not apply, since we have a commodity exempt from its provisions. Strickland Transportation Co. v. Brown Express, Tex.Civ.App., 321 S.W.2d 357. This was not an intrastate shipment, and Article 905, Vernon's Ann. Civ.Stats., which makes one carrier the agent of the other, does not apply. We must determine whether under common law the bill of lading issued by Brown, under these facts, was a written contract binding upon the connecting carrier. The common law is expressed in an opinion by the Supreme Court in Elder, Dempster & Co. v. St. Louis S. W. R. Co. of Texas, 105 Tex. 628, 154 S.W. 975. Buried on page 986 of that exhaustive opinion are two rules which declare the common law. A connecting carrier is bound by the writing of the initial carrier when the contract is for carriage from the point of shipment to the destination, and shipment must be received and carried by the connecting carrier under that contract. Recognition of the bill of lading will suffice. In our opinion, there is a failure of proof that Strickland, the connecting carrier, received and carried the shipment under the bill of lading or

that it even knew of the existence of such a document. Since the suit against Strickland, the connecting carrier, is governed by the common law which required proof of a writing, or that it recognized the prior writing, and since there is an absence of this proof, there was no action against Strickland based upon a written contract. Galveston, H. & S. A. R. Co. v. Jones, 104 Tex. 92, 134 S.W. 328, 330. This suit was filed more than two years after the accrual of the cause and is barred by limitations.

The judgment is reversed and rendered that shipper take nothing.