**Julio GONZALES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 40237.**

Court of Criminal Appeals of Texas.

March 22, 1967.

Rehearing Denied May 10, 1967.

Spence, Martin & Richie by Gene Richie, Wichita Falls, for appellant.

Stanley C. Kirk, Dist. Atty., Jim Phagan, Asst. Dist. Atty., Wichita Falls, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is felony theft with two prior felony convictions alleged for enhancement; the punishment, life.

Appellant supported his motion to quash the indictment on the grounds that Latin Americans had been systematically excluded from service on the Grand Juries in Wichita County by the testimony of three Latin Americans who resided in the county and the testimony of his court appointed counsel.

Jose Arias testified that he knew people who would be qualified to serve on the Grand Jury who were Spanish speaking or Latin American citizens of Wichita County and named ten of them.

Pete Martinez testified that he knew a "goodly number" of citizens of Wichita County of Latin American extraction or Spanish speaking people who were qualified to serve as Grand Jurors and stated that as far as he knew he was the only person of Mexican descent who had ever served on the Grand Jury. On cross examination he admitted that he did not know that Juan Rangel had served on the Grand Jury Commission in 1961 right after he had served, nor did he know that Ivey Gonzales had served on the Grand Jury Commission in said county in 1954, nor did he know that Mack Herrera had served on the Grand Jury in said county in 1954.

Fidencio Navarette gave testimony comparable to that of Jose Arias.

Appellant's court appointed attorney testified that he had searched the Clerk's criminal file docket from 1951 through 1966 and ascertained that out of approximately 4,524 indictments returned during

that period in Wichita County, 165 were against defendants who had Spanish surnames.

The District Judge of the 30th District Court of Wichita County, where this indictment was returned, testified that he was fully aware of the holdings of the Supreme Court of the United States and of this Court which denounced systematic exclusion and that he was not aware of any such exclusion of Latin Americans since he took office in 1951. He was able to recall from memory only Ivey Gonzales, who had served on the Grand Jury Commission during his tenure, but he did testify that the case at bar was the first one in which a question of discrimination against Latin Americans had ever been raised, and further stated that the Negro population was, like the Latin American population, a "pretty small minority" and that he had appointed a Negro to serve as foreman of the then existing Grand Jury.

The Assistant District Attorney prosecuting the case testified that an examination of the county poll tax rolls revealed that in 1960 a total of 15,963 persons paid their poll taxes in Wichita County and of that number, 132 persons had Spanish surnames. A similar check of the rolls for 1963 revealed 24,179 poll taxes of which 244 had Spanish surnames.

An examination by this Court of the list of Grand Jury Commissioners and the Grand Juries during the period in question and which were made a part of this record on appeal reveals that Ivey Gonzales served as a Grand Jury Commissioner in 1954, and that Mack Herrera, Pete Martinez and Juan Rangel each were chosen for service as Grand Jurors.

No evidence was introduced as to the number who served on petit juries since Wichita County operates under the jury wheel.

■ From the above it will be seen that under Article 339, Vernon's Ann.C.C.P. as

it read at the time of the formation of the jury which returned this indictment, the percentage of those qualified who were of Latin American extraction was so small as to be almost infinitesimal. When considered in connection with the number of the same racial extraction who had actually been selected and had served, we have concluded that appellant has failed in his efforts to make out a prima facie case of the denial of the equal protection clause of the Constitution.

This case is readily distinguishable from Hernandez v. State of Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866, where the population percentage was far in excess of these existing in Wichita County and no person with a Mexican or Latin American name had served on the Jury Commission, the Grand Jury or the Petit Jury in Jackson County for the twenty-five years preceding Hernandez' trial.

This case is also readily distinguishable from the two cases in which this Court held the indictments void because of systematic exclusion of Negroes from jury service because in these cases the population percentage was substantial. See Davis v. State, Tex.Cr.App., 374 S.W.2d 252, and Stoker v. State, 169 Tex.Cr.R. 59, 331 S.W.2d 310.

■ His next ground of error is based upon the following argument of the prosecutor at the hearing on guilt or innocence:

"BY MR. KIRK: All right, let's take the testimony of this alibi witness, Prentice Cox. Prentice Cox, a convicted felon, a drunk, a friend of the defendant, and a foe of police officers. Does that make him a credible witness? Does that make him worthy of belief? One of the reasons that a lawyer in cross examining a witness can go into a defendant's background, that is to see if he has been convicted—

MR. RICHIE: We are going to object to the prosecutor arguing the law to the

jury and why they can do this and do that under the law, your honor.

THE COURT: Sustain the objection.

(BY MR. KIRK) All right, let me put it this way: This defendant was convicted of various felonies and some misdemeanors involving moral turpitude—

MR. RICHIE: Now your honor, at this stage—

MR. KIRK: I'm sorry—

MR. RICHIE: He referred to the defendant. He told the jury that the defendant had heretofore been convicted of felonies. We object to that line of argument at this stage; it is outside the record, and we ask the court to instruct the jury not to consider that.

MR. KIRK: He won't have to do it. I'll do it. I meant to say Prentice Cox.

MR. RICHIE: Also, at this time I have no alternative but, in view of what has been said, to ask the court the declare a mistrial.

THE COURT: Overruled.

MR. RICHIE: Note the exception of the defendant.

(BY MR. KIRK) You all know I was referring to Mr. Cox. He was a convicted felon and you can consider his felony convictions and his misdemeanor convictions for moral turpitude in considering his credibility, whether or not a man like that would be worthy of belief."

The State concedes that the prosecutor cannot refer to the appellant's prior record in jury argument where such had not been proven by the testimony up to that point, but points to the entire excerpt to demonstrate that this was a mistake for which the prosecutor expressed his sorrow for using the term "this defendant" when it was clear that he was referring to the witness.

We have concluded that the holding of this Court in Bowling v. State, 165 Tex.

Cr.R. 250, 306 S.W.2d 372, is applicable to the facts here presented and should control the disposition of this appeal. It is clear that the first objection did not inform the prosecutor of his error and when such error was made known to him he withdrew the statement and the court then overruled the objection. This is the sequence of events in Bowling v. State, supra.

Finding no reversible error, the judgment is affirmed.